SANDRA J. CONOWAY, as Mother and Next Friend of Randy Conoway, a Minor, *et al.*, Plaintiffs-Appellants, v. HANOVER PARK PARK DISTRICT, Defendant-Appellee.

First District (4th Division)  No. 1—93—3264

Opinion filed February 8, 1996.

Barbara J. Clinite, of Chicago, for appellants.

Judge & James, Ltd., of Park Ridge (Jay S. Judge, Kristine A. Karlin, and Steven A. Kozicki, of counsel), for appellee.

JUSTICE O'BRIEN delivered the opinion of the court:

Sandra J. Conoway brought an action against defendant, Hanover Park Park District, seeking the recovery of damages for injuries allegedly suffered by nine-year-old Randy Conoway when he fell into a drainage ditch in Community Park. Counts I and II of the complaint were predicated upon negligence. Counts III and IV claimed willful and wanton misconduct. A bench trial was held on the complaint. At the close of plaintiffs' case, defendant moved for a directed finding in its favor pursuant to section 2—1110 of the Code of Civil Procedure (735 ILCS 5/2—1110 (West 1992)). The trial court granted the motion and entered judgment for defendant on all four counts. Plaintiffs appeal. We affirm.

During plaintiffs' case in chief, testimony established that defendant owns and maintains Community Park. At the front of the park is a brick administration building. The back portion of the building contains recreational facilities such as basketball, tennis, and racquetball courts. Surrounding the administration building is a moat constructed to prevent persons from damaging the building, provide security to those employed, and provide drainage for water run-off. As water builds up in the moat, it runs into the drainage ditch and eventually into a large retention pond.

A concrete dam separates the moat from the drainage ditch. Fishing is allowed on the concrete dam and along the banks of the drainage ditch. The public is not authorized to enter the water in the moat, retention pond, or drainage ditch.

On June 26, 1988, Randy Conoway, Kevin Box, Matt Hughes, and Bill Huff were fishing for tadpoles and frogs on the cement dam in Community Park. Kevin bumped into Randy, causing Randy to fall into the drainage ditch. Randy landed "on all fours" in the water about three or four feet from the dam. Randy crawled 12 to 14 feet to the bank. When he reached the top of the bank, Randy noticed his left hand was bleeding.

Randy could not say what cut his hand. However, on the day of the accident the water and banks of the drainage ditch contained sharp glass debris. There were also a metal pole and a telephone pole

in the water. Bill Huff noticed that when Randy first came up out of the water, his bleeding hand was on the telephone pole.

■ In counts I and II of their complaint, plaintiffs alleged defendant acted negligently by (1) failing to fence the drainage ditch and dam or otherwise prevent access to those areas by young children; (2) allowing broken bottles and other debris to accumulate at the bottom of the drainage ditch where they were hidden from view; and (3) failing to warn the public that the drainage ditch contained debris hidden beneath the water. The trial court granted defendant's motion for a directed finding (735 ILCS 5/2—1110 (West 1992)) on counts I and II pursuant to section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act), which states:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of *willful and wanton conduct* proximately causing such injury." (Emphasis added.) (745 ILCS 10/3—106 (West 1992).)

Plaintiffs appeal the directed finding in defendant's favor.

■ Under a section 2—1110 motion for a directed finding, the trial court first determines whether plaintiffs have made out a *prima facie* case as a matter of law. (*Wehde v. Regional Transportation Authority* (1992), 237 Ill. App. 3d 664, 675, 604 N.E.2d 446.) If plaintiffs have not established a *prima facie* case, the trial court should grant defendant's motion and enter judgment in its favor. (*Wehde*, 237 Ill. App. 3d at 675.) If plaintiffs have made out a *prima facie* case, the trial court must weigh plaintiffs' evidence. (*Wehde*, 237 Ill. App. 3d at 675.) Contrary to the *Pedrick* standard for directed verdicts (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504), the court does not view the evidence in the light most favorable to plaintiffs. (*Wehde*, 237 Ill. App. 3d at 675-76.) Rather, the court considers all the evidence, including evidence favorable to defendant, passes on the credibility of witnesses, draws reasonable inferences from the testimony, and considers the general weight and quality of the evidence. (*Wehde*, 237 Ill. App. 3d at 676.) If this weighing process results in negation of some of the evidence necessary to plaintiffs' *prima facie* case, defendant is entitled to judgment. (*Seymour v. Harris Trust & Savings Bank* (1994), 264 Ill. App. 3d 583, 602, 636 N.E.2d 985.) On appeal, the reviewing court will not disturb the trial court's ruling unless it is contrary to the manifest

weight of the evidence. *Wehde*, 237 Ill. App. 3d at 676; *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43.

The trial court in this case granted a directed finding for defendant on plaintiffs' negligence counts (I and II), ruling that Randy's injuries occurred on public property intended or permitted to be used for recreational purposes. Therefore, pursuant to section 3—106 of the Tort Immunity Act, defendant is liable for those injuries only if it committed willful and wanton misconduct.

Plaintiffs respond that while defendant permitted recreational use of the cement dam upon which Randy fished, it did not permit such use of the ditch into which he fell. Section 3—106 therefore does not apply, and the trial court erred in directing a finding for defendant on counts I and II.

We disagree with plaintiffs' argument and find *Annen v. Village of McNabb* (1990), 192 Ill. App. 3d 711, 548 N.E.2d 1383, to be controlling. In *Annen*, six-year-old Jennifer Annen was using a rest room located within Coleman Park when a sink fell from a wall, seriously injuring her. (*Annen*, 192 Ill. App. 3d at 712.) Annen filed suit alleging negligence on the part of the village in maintaining the rest room. The trial court dismissed the complaint, ruling that section 3—106 of the Tort Immunity Act limited her action to one alleging willful and wanton misconduct. (*Annen*, 192 Ill. App. 3d at 712.) Annen appealed, arguing that a rest room building does not come within the purview of section 3—106 because the building is not intended or permitted to be used for recreational purposes. (*Annen*, 192 Ill. App. 3d at 712.) We affirmed the trial court, holding:

> "The purpose of section 3—106 is to encourage the development and maintenance of parks, playgrounds and similar areas. [Citation.] A restroom facility located within a park is a part of the park. While a restroom building itself is not intended to be used for recreational purposes, it allows a park user to continue using the park without having to leave the park to use restroom facilities. This increases the usefulness of the park and advances the legislative purpose." *Annen*, 192 Ill. App. 3d at 713.

In the instant case, evidence presented in plaintiffs' case in chief established that the drainage ditch in Community Park into which Randy fell protects Park District property from vandalism and provides drainage for water run-off. Thus, like the rest room building in *Annen*, the drainage ditch in Community Park increases the usefulness of the park and thereby advances the legislative purpose of section 3—106. The trial court therefore correctly determined that section 3—106 was applicable and that plaintiffs were required to allege willful and wanton misconduct.

However, plaintiffs argue that since defendant raised the issue of section 3—106 immunity as an affirmative defense, the trial court erred by directing a finding for defendant on counts I and II at the close of plaintiffs' case. Plaintiffs cite *Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 408, 444 N.E.2d 220, for the general rule that the party who asserts an affirmative defense has the burden of proving it. Therefore, plaintiffs contend the trial court should have required defendant to offer evidence in support of its affirmative defense after plaintiffs rested. The trial court then should have allowed plaintiffs to counter that evidence in their rebuttal.

Plaintiffs' argument would have merit if, after plaintiffs rested, defendant amended its answer to assert for the first time section 3—106 immunity as an affirmative defense and then moved for a directed finding. In such a situation, to avoid unfair surprise and prejudice to plaintiffs, the trial court should not grant a directed finding in defendant's favor. Instead, the trial court should require defendant to put on evidence in support of its affirmative defense and then allow plaintiffs to offer evidence in rebuttal.

However, in this case, defendant raised section 3—106 immunity as an affirmative defense to counts I and II *prior* to trial. As discussed above, plaintiffs' own evidence in their case in chief proved the applicability of section 3—106 immunity. Thus, plaintiffs should not have been surprised when defendant moved for a directed finding on counts I and II based on section 3—106. We affirm the trial court's order directing a finding for defendant on counts I and II of plaintiffs' complaint.

■ Next, plaintiffs argue the trial court erred when it directed a finding for defendant on counts III and IV of their complaint, which alleged that defendant acted willfully and wantonly. Section 1—210 of the Tort Immunity Act defines willful and wanton misconduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." (745 ILCS 10/1—210 (West 1992).) Our supreme court has explained that willful and wanton misconduct is demonstrated by "a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by ordinary care." *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469, 415 N.E.2d 1015; see also *Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, 274, 641 N.E.2d 402.

Plaintiffs do not contend that defendant intentionally harmed Randy. Rather, they argue defendant showed an utter indifference to

or conscious disregard for his safety by allowing him to play on the dam without clearing away the glass and debris in the drainage ditch or otherwise warning him about the dangers posed by the glass and debris.

Randy and the persons who were fishing with him on June 26, 1988, testified that the area in which Randy fell that day was a "junkyard" of broken glass, plastic containers, pieces of wood, a metal pole and a telephone pole. However, Randy also testified he had visited the park numerous times prior to his accident, but June 26, 1988, "was the first time [he] had seen [the drainage ditch] that bad." This statement is important because no witness testified that anyone informed defendant about the condition of the drainage ditch on June 26, 1988. Although witnesses testified defendant frequently inspected and cleaned the park, plaintiffs presented no evidence that defendant inspected the drainage ditch on June 26, 1988, and thereby had independent knowledge of its condition that day. Thus, the trial court could conclude that plaintiffs failed to establish a *prima facie* case of willful and wanton misconduct by defendant, because plaintiffs had not proven defendant knew or should have known about an imminent danger posed by the glass and debris in the drainage ditch. We affirm the trial court's order directing a finding for defendant on counts III and IV of plaintiffs' complaint.

Affirmed.

HOFFMAN, P.J., and CAHILL, J., concur.