(No. 81138.—

ALICE SYLVESTER, Appellee, v. THE CHICAGO PARK DISTRICT, Appellant.

*Opinion filed December 4, 1997.—Rehearing denied February 2, 1998.*

FREEMAN, C.J., specially concurring.
HARRISON and NICKELS, JJ., dissenting.

Jeanne Grabovac Toft, of Chicago, for appellant.

John E. Marszalek, of Marszalek & Marszalek, of Chicago (Paul R. Karasik, of counsel), for appellee.

James D. Wascher, Charlene L. Holtz and Patricia A. Holland, of Friedman & Holtz, P.C., of Chicago, for *amici curiae* Illinois Association of Park Districts *et al.*

JUSTICE MILLER delivered the opinion of the court:

· Plaintiff, Alice Sylvester, filed a complaint against defendant, the Chicago Park District, to recover damages for injuries she sustained as a result of a fall on Park District property. The complaint alleged the Park District was negligent in allowing a concrete parking abutment to block a walkway adjacent to a parking lot exit located south of Soldier Field.

The Park District moved to dismiss the complaint pursuant to section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 3—106). Section 3—106 provides:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." Ill. Rev. Stat. 1989, ch. 85, par. 3—106.

The trial judge denied the Park District's motion to dismiss.

Following a bench trial, the judge ruled in favor of

plaintiff. However, the judge reduced plaintiff's damages by 10% due to her comparative negligence. The Park District appealed. The appellate court affirmed. No. 1—93—3639 (unpublished order under Supreme Court Rule 23).

The Park District filed a petition for leave to appeal. 155 Ill. 2d R. 315(a). We allowed the Park District's petition. We also allowed the Illinois Association of Park Districts, the Illinois Municipal League, and the Illinois Governmental Association of Pools to file a joint *amici curiae* brief. 155 Ill. 2d R. 345(a). While the appeal was pending here, plaintiff filed a motion in this court seeking leave to file a first amended complaint in the trial court. Plaintiff's motion has been taken with the case.

## BACKGROUND

On September 23, 1991, plaintiff and her husband parked their car at a McCormick Place parking lot and walked toward Soldier Field in order to meet their daughters for a Monday evening Chicago Bears football game. While walking to Soldier Field, plaintiff tripped over a concrete parking abutment (a "car stop") and fell. Employees of the Park District admitted that the car stop was improperly blocking a walkway.

The record reveals that at the time of plaintiff's fall, the car stop was located on a walkway adjacent to a parking lot exit at the northeast corner of Soldier Field's south parking lot. In her complaint, plaintiff alleged that this location was owned, operated, possessed, and maintained by the Park District. The Park District admitted this allegation.

Plaintiff stated in her complaint that she was walking on Park District property in order to reach Soldier Field to attend a football game. Plaintiff has not alleged and the record does not reveal whether plaintiff's fall occurred within the confines of a park. Evidence was introduced, however, to show that the Burnham Park

maintenance department cleans the south lot after events occurring at Soldier Field.

Plaintiff allegedly sustained a number of injuries as a result of her fall. Plaintiff sued the Park District under a theory of negligence. Plaintiff alleged that the Park District was negligent in either placing the car stop on the walkway or in failing to remove the car stop from the walkway. Plaintiff also alleged that the Park District was negligent in failing to warn pedestrians of the car stop's location and in failing to illuminate adequately the area in which the car stop was located. Plaintiff did not allege any willful or wanton misconduct on the part of the Park District.

Relying on section 3—106 of the Tort Immunity Act, the Park District filed a motion to dismiss plaintiff's complaint under section 2—619(a)(9) of the Code of Civil Procedure. Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9). The Park District claimed in its motion that plaintiff's use of its property was for the recreational purpose of attending a football game. The Park District stated that this use was intended and permitted by the Park District. Thus, the Park District argued that plaintiff's allegations of negligence were barred by section 3—106.

In support of its motion to dismiss, the Park District stated that the parking lot and walkway were recreational property because they allowed patrons of Soldier Field to park in close proximity to the stadium. The Park District stated that parking in proximity to the stadium furthers a patron's recreational activity of attending a Chicago Bears football game. The Park District's motion to dismiss was denied.

In its answer to plaintiff's complaint, the Park District asserted several affirmative defenses. The Park District again relied on section 3—106. The Park District claimed that it was not liable for the negligence alleged by plaintiff because plaintiff's fall occurred on public property used for recreational purposes.

In a further affirmative defense, the Park District also relied on section 3—102(a) of the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a)). Section 3—102(a) provides that a local public entity shall not be liable for injury occurring on public property unless it is proven that the local public entity has actual or constructive notice of the injury causing condition. The Park District stated it had neither actual nor constructive notice of the car stop's improper placement on the walkway. Lacking notice, the Park District alleged that it was immune from liability.

In the alternative, the Park District relied on section 3—102(b) of the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 3—102(b)). Section 3—102(b) provides that a local public entity does not have constructive notice of an injury causing condition located on public property if the local public entity operates a reasonably adequate inspection system. The Park District alleged that its pregame traffic control and parking lot setup routine around Soldier Field qualified as an "inspection system" under section 3—102(b). The Park District claimed that its inspection system provided a defense to any finding of constructive notice.

Following a bench trial, the judge ruled in favor of plaintiff. In reaching this result, the judge found that the Park District was negligent in failing to provide reasonably safe access to Soldier Field. The judge then addressed, and rejected, the Park District's defenses under sections 3—106 and 3—102.

The judge found that the Park District's section 3—106 defense did not apply. The judge stated: "As I previously said, the Park District can't rely on Section 3—106, which grants immunity for recreational facilities, because this parking lot that is access to Soldier Field is not a recreational facility."

The judge also found that there was no evidence to

indicate that the Park District had actual notice of the car stop's location on the walkway. However, the judge did find that the Park District had constructive notice of the car stop's location. The car stop was conspicuous because it weighed approximately 100 pounds and took several men or a forklift to move. Also, based on the photographs entered into evidence, the judge stated, "this conspicuous obstacle did exist, and it must have been there, I found, for enough time for the Park District to become aware of it." Because the Park District had constructive notice of the car stop's improper placement on the walkway, the judge found that the Park District was not immune from liability under section 3—102(a).

The judge further found no evidence to support the Park District's claim that its pregame traffic control and parking lot setup routine qualified as an inspection system that would have led to the discovery of the improperly positioned car stop. Thus, section 3—102(b) did not provide a defense to the Park District's constructive notice of the car stop's improper location on the walkway.

The appellate court affirmed. No. 1—93—3639 (unpublished order under Supreme Court Rule 23). The appellate court examined the Park District's section 3—106 defense in light of *Bubb v. Springfield School District 186,* 167 Ill. 2d 372 (1995). In *Bubb,* we addressed whether a school district is immune from liability for negligence under section 3—106 when a student is injured on a sidewalk surrounding a school when that sidewalk is used for recreation.

Relying on *Bubb,* the appellate court attempted to determine whether the location of plaintiff's fall was a recreational area under section 3—106. The court stated that the Park District failed to present evidence regarding the recreational character of the location of plain-

tiff's fall. Lacking this evidence, the court concluded the trial judge was correct to find that section 3—106 did not provide immunity for the Park District.

During its appeal to the appellate court, the Park District, for the first time in its reply brief, asked the appellate court to take judicial notice of the fact that plaintiff's fall occurred within Burnham Park. The court declined to do so. The court stated that even if it were to take judicial notice of the location of Burnham Park, the Park District still failed to carry its burden of establishing a section 3—106 affirmative defense. The court found that the Park District did not introduce any evidence that plaintiff's fall occurred in an area traditionally used for recreational purposes.

The appellate court also reviewed the trial judge's two section 3—102 findings. Because the car stop was conspicuous and improperly positioned long enough for the Park District to become aware of it, the court concluded that a finding of constructive notice under section 3—102(a) was not against the manifest weight of the evidence.

In addition, the appellate court agreed with the trial judge that there was no evidence to demonstrate that the Park District operated a reasonably adequate inspection system. Thus, the trial judge's section 3—102(b) finding was not against the manifest weight of the evidence.

## DISCUSSION

The Park District asks this court to take judicial notice of the fact that plaintiff's fall occurred within Burnham Park. Assuming we take judicial notice of this fact, the Park District argues that it is automatically entitled to immunity under section 3—106 because parks are by definition "property intended or permitted to be used for recreational purposes." Ill. Rev. Stat. 1989, ch. 85, par. 3—106. For the reasons that follow, we decline to take judicial notice of the location of plaintiff's fall.

Prior to trial, the Park District did not claim in its motion to dismiss or in its answer to plaintiff's complaint that plaintiff's fall occurred within Burnham Park. During trial, the Park District did not claim or introduce evidence to demonstrate that plaintiff was injured in a park. In fact, the Park District concedes in its brief that "no evidence was presented at trial technically fixing the situs of plaintiff's injury as a sidewalk located in Burnham Park." Furthermore, the Park District never asked the trial judge to take judicial notice of the fact that plaintiff was injured in Burnham Park.

The Park District in its reply brief in the appellate court asked that court to take judicial notice that plaintiff was injured in Burnham Park. The appellate court declined to do so. The court stated that even if it were to take judicial notice of the location of plaintiff's fall, the Park District failed to establish that plaintiff's fall occurred in an area traditionally used for recreational purposes.

The Park District has waived its contention that plaintiff was injured in a park by failing to present evidence or seek judicial notice of this fact in the trial court. "[I]t is axiomatic that where evidence was not offered during the trial of a matter, it cannot be introduced for the first time on appeal." *H.J. Tobler Trucking Co. v. Industrial Comm'n*, 37 Ill. 2d 341, 344 (1967). Also, "[i]t is required that the points argued on appeal be commensurate with the issues presented at trial." *Kravis v. Smith Marine, Inc.*, 60 Ill. 2d 141, 147 (1975). Moreover, the Park District's contention that plaintiff was injured in a park was raised for the first time in its reply brief in the appellate court. Under Supreme Court Rule 341(e)(7), points not argued in an appellant's brief are waived and shall not be raised in the reply brief. 155 Ill. 2d R. 341(e)(7).

In the alternative, the Park District argues that plaintiff's fall occurred on "property intended or permitted to be used for recreational purposes." Ill. Rev. Stat. 1989, ch. 85, par. 3—106. The evidence shows that plaintiff's fall occurred on the walkway of a Park District parking lot serving Soldier Field. The Park District intended for and permitted football fans to park in the lots adjacent to Soldier Field and use the walkways to gain access to the stadium. Plaintiff possessed a ticket to attend the football game and was injured while walking to the game. Thus, the Park District argues that the location of plaintiff's fall was part of the recreational purpose of Soldier Field. We agree.

In *Bubb*, we found that section 3—106 "applies if public property is intended or permitted to be used for recreational purposes, regardless of the primary purpose of the property." *Bubb*, 167 Ill. 2d at 384. Application of a section 3—106 defense does not depend only on a plaintiff's active engagement in a recreational activity at the time of injury. See J. DeAno, *Governmental Immunities for Recreational Injuries*, 82 Ill. B.J. 28, 28-29 (1994).

In addition, section 3—106 may apply to facilities or structures that increase the usefulness of public property intended or permitted to be used for recreational purposes. These facilities or structures need not be recreational in character for section 3—106 to apply. See S. Puiszis, Illinois Municipal Tort Liability § 4—10, at 183 (1996). Although the walkways and parking lots adjacent to Soldier Field may not be primarily recreational, Soldier Field itself is certainly recreational and these facilities increase its usefulness. Taken as a whole, we find that Soldier Field and its adjacent walkways and parking lots are intended or permitted to be used for recreational purposes.

A review of the legislative history supports our

conclusion. Prior to 1986, local public entities were faced with difficulties affording liability insurance. As stated by Senator Rock, legislators were "somewhat appalled that counties and park districts and municipalities were confronted with the fact that they were uninsurable or that the insurance that was offered to them was unaffordable." 84th Ill. Gen. Assem., Senate Proceedings, June 30, 1986, at 78 (statements of Senator Rock).

The legislature responded to these difficulties by enacting Public Act 84—1431 which, among other things, amended portions of the Tort Immunity Act. In order to decrease the costs of liability insurance, the legislature expanded the scope of immunity provided to local public entities under section 3—106. The legislature accomplished this expansion of immunity by abandoning the focus on specific types of public property and instead focusing on the intended or permitted use of the property.

Prior to its amendment in 1986, "section 3—106 immunity was specifically limited to parks, playgrounds, and open areas used for recreational purposes." *Bubb*, 167 Ill. 2d at 378. Following its amendment, immunity was expanded by including "public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities." Pub. Act 84—1431, art. 1, § 2, eff. November 25, 1986 (amending Ill. Rev. Stat. 1985, ch. 85, par. 3—106).

Thus, under section 3—106 as amended, it is the character of the property as a whole that determines whether immunity applies. See *Bubb*, 167 Ill. 2d at 379, 381 (agreeing with the reasoning of courts that examine "the nature of the property as a whole"). In this case, an examination of the property as a whole indicates that the parking lot in which plaintiff fell was an integral part of the Soldier Field recreational facility. We

therefore believe that the trial judge erred in narrowly focusing on only whether the parking lot by itself was being used for recreational purposes.

We note that our conclusion is consistent with the Seventh Circuit's decision in *Diamond v. Springfield Metropolitan Exposition Auditorium Authority*, 44 F.3d 599 (7th Cir. 1995). In *Diamond*, the plaintiff was on her way to a career related conference when she was injured in the doorway of an underground tunnel leading to a facility used for conventions, shows, and sporting events. The court stated that section 3—106 immunity depends on "the character of the property as a whole, rather than whether the injured person was engaged in a nonrecreational activity." *Diamond*, 44 F.3d at 604. Because both participants in and spectators of sporting events are engaged in recreation (see *Diamond*, 44 F.3d at 603), the court found that the facility was permitted to be used for recreational purposes (see *Diamond*, 44 F.3d at 604-05). Accordingly, the court concluded that plaintiff's negligence action was barred by section 3—106.

Our appellate court has reached similar results. In *Annen v. Village of McNabb*, 192 Ill. App. 3d 711 (1990), plaintiff was injured in a restroom located in a park. Under section 3—106, the appellate court affirmed the dismissal of plaintiff's negligence claim. The court stated that "[w]hile a restroom building itself is not intended to be used for recreational purposes, it allows a park user to continue using the park ***. This increases the usefulness of the park and advances the legislative purpose." *Annen*, 192 Ill. App. 3d at 713.

In *Lewis v. Jasper County Community Unit School District No. 1*, 258 Ill. App. 3d 419 (1994), plaintiff was injured by falling against a pumphouse located on a school playground. Relying on section 3—106, the appellate court affirmed the dismissal of plaintiff's negligence

claims. The court stated that the "immunity provisions of section 3—106 have been held to apply to nonrecreational equipment and structures located on premises used for recreational activities." *Lewis*, 258 Ill. App. 3d at 423.

Similar results may be found in additional cases. See, *e.g.*, *Conoway v. Hanover Park Park District*, 277 Ill. App. 3d 896 (1996) (plaintiff was barred from recovery when injured by falling into a drainage ditch in a park); *Hanover Insurance Co. v. Board of Education of the City of Chicago*, 240 Ill. App. 3d 173 (1992) (worker was barred from recovery when injured by slipping on cracked concrete in a school playground while performing masonry repairs); *Kirnbauer v. Cook County Forest Preserve District*, 215 Ill. App. 3d 1013 (1991) (plaintiff was barred from recovery when injured by a cable barricade restricting entry to a forest preserve access road).

Because we find that the Park District is not liable in actions for negligence in the circumstances presented here, we do not address the Park District's additional immunity arguments regarding constructive notice under section 3—102 nor do we address the Park District's argument that parks are automatically entitled to immunity under section 3—106.

We must still dispose of plaintiff's pending motion seeking leave to file a first amended complaint under Supreme Court Rule 362. 155 Ill. 2d R. 362. The purpose of Rule 362 is to amend the pleadings to conform to the evidence presented at trial. A movant "must show the amendment to be necessary, that no prejudice will result to the adverse party if the amendment sought is permitted, and that the issues sought to be raised by the amendment are supported by the facts in the record on appeal." 155 Ill. R. 362(b). "Rule 362 is not a vehicle to raise wholly new issues on appeal." *Local 165 v. Bradley*, 149 Ill. App. 3d 193, 213 (1986).

In plaintiff's motion, she seeks leave to add a second count to her complaint alleging that the Park District engaged in willful and wanton misconduct. The trial had proceeded only on a theory of negligence. In fact, plaintiff's attorney stated to the trial court: "First of all, I would just like to state again for the record this case is based upon [a] theory of negligence, and it is not incumbent upon my client in this action to prove any willful and wanton conduct on the part of the Park District."

In *Griffin v. Darda*, 28 Ill. App. 3d 693 (1975), plaintiff was a passenger in an automobile that collided with another vehicle. Plaintiff filed suit against the driver of the automobile in which she was riding. Plaintiff alleged the driver was guilty of willful and wanton misconduct. Following a bench trial, judgment was entered in the driver's favor. On appeal, plaintiff sought to amend her complaint to add a count alleging negligence against the driver. After citing Rule 362, the appellate court stated that the trial below had:

> "proceeded on the theory that when [plaintiff] was injured, [the driver] was guilty of willful and wanton misconduct. Witnesses were called, cross-examination was conducted, and evidence was presented in accordance with this theory. There is no fact in the record to support the notion that negligence was a theory of the case." *Griffin*, 28 Ill. App. 3d at 696-97.

The appellate court denied plaintiff's motion seeking leave to file an amended complaint.

In this case, plaintiff proceeded on a theory of negligence and specifically stressed that point in the trial court. There are no facts in the record which indicate that a theory of willful and wanton misconduct on the part of the Park District was a theory at trial. Like the Park District's request that we take judicial notice of the parking lot's location within Burnham Park to which the plaintiff objected, plaintiff's attempt

to amend her complaint comes too late. Plaintiff's motion seeking leave to file a first amended complaint is denied.

## CONCLUSION

For the foregoing reasons, we find that the Park District is entitled to immunity under section 3—106 of the Tort Immunity Act. Accordingly, we reverse the judgments of the appellate and trial courts. In addition, we deny plaintiff's motion seeking leave to file a first amended complaint.

*Judgments reversed.*

CHIEF JUSTICE FREEMAN, specially concurring:

My colleagues hold that plaintiff's fall occurred on "property intended or permitted to be used for recreational purposes" as provided in section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 3—106). Therefore, they find that the Park District is not liable for injuries which the plaintiff sustained. I concur with the majority's conclusion that the property on which plaintiff fell is intended or permitted to be used for recreational purposes. However, I believe that the majority's application of the increased usefulness test will provide broader immunity than the legislature intended.

Specifically, the majority asserts that the Park District intended for and permitted football fans to park in the lots adjacent to Soldier Field and use the walkways to gain access to the stadium. Because plaintiff possessed a ticket to attend the football game and was injured while walking to the game, the majority concludes that the location of plaintiff's fall was part of the recreational purpose of Soldier Field.

The majority bases its reasoning on appellate court cases which have held that, taken as a whole, a facility

or structure will be considered to fall within the scope of section 3—106 if it increases the usefulness of public property intended or permitted to be used for recreational purposes. See *Conoway v. Hanover Park Park District*, 277 Ill. App. 3d 896, 900 (1996); *Kirnbauer v. Cook County Forest Preserve District*, 215 Ill. App. 3d 1013, 1022-23 (1991). This test was first espoused in *Annen v. Village of McNabb*, 192 Ill. App. 3d 711 (1990). In *Annen*, the plaintiff was using a restroom located within a park when a sink fell from a wall, seriously injuring her. The court found that the purpose of section 3—106 manifested an intent to include restroom facilities within a park as part of the park itself. The court stated:

> "A restroom facility located within a park is a part of the park. While a restroom building itself is not intended to be used for recreational purposes, it allows a park user to continue using the park without having to leave the park to use restroom facilities. This increases the usefulness of the park and advances the legislative purpose." *Annen*, 192 Ill. App. 3d at 713.

The majority in the instant case adopts the reasoning in *Annen* and concludes that, "[a]lthough the walkways and parking lots adjacent to Soldier Field may not be primarily recreational, Soldier Field itself is certainly recreational and these facilities increase its usefulness." 179 Ill. 2d at 508.

Although the increased usefulness test provides a fairly straightforward means to determine whether certain property is subject to section 3—106 immunity, I do not believe that the test should be so mechanically applied such that any consideration of the injured party's use of the property is ignored. In fact, we considered limiting the scope of the "increased usefulness" test in *Bubb*, where we stated:

> "Providing immunity to any public property where recreation might occur would eviscerate the duty codified in section 3—102. *** [A]t some point, the use of public property for recreation may be so incidental that section

3—106 does not apply." *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 382 (1995).

I believe that this case is one in which plaintiff's use of the property was so incidental that section 3—106 should not apply. The record reveals that the plaintiff parked her car in the McCormick Place parking lot, approximately one mile from Soldier Field. However, the injury occurred as she was crossing the south parking lot, which is located across the street from Soldier Field. The parking lot where plaintiff was injured does increase the usefulness of Soldier Field; the lot provides convenient parking for the public. However, plaintiff's actual use of the property was incidental, as she was merely walking across the lot to reach Soldier Field. It is only happenstance that the lot is available to increase the use of Soldier Field. Plaintiff's presence on the lot had nothing to do with the lot's availability for parking. Plaintiff merely chose the lot as the path by which she could access Soldier Field. Had plaintiff chosen a different path to access Soldier Field, that property, simply because it provided convenient access, would not merit section 3—106 immunity.

I do not believe that the legislature intended to expand the scope of section 3—106 to provide immunity to governmental units for use that is merely incidental to the purpose of the property. For all practical purposes, unless the increased usefulness test is limited in its application and scope, the duty of a governmental unit to exercise even ordinary care will be diminished.

JUSTICE HARRISON, dissenting:

I agree with Justice Freeman's conclusion that section 3—106 should not apply to this case. In my view, however, this conclusion must yield a different result. Because the Park District is not entitled to immunity under section 3—106, there is no basis for disturbing the judgments of the circuit and appellate courts, and

those judgments should be affirmed. Accordingly, I dissent.

JUSTICE NICKELS, also dissenting:

Plaintiff was injured when she fell upon a walkway which is adjacent to a Soldier Field parking lot. The majority finds the Park District immune from liability for plaintiff's injuries under section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 3—106), because plaintiff's fall occurred on property intended or permitted to be used for recreational purposes. Because I cannot concur with the majority's conclusion in this case, I respectfully dissent.

The legislature codified the general duty of a local public entity to use ordinary care to maintain public property in section 3—102 of the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 3—102). However, section 3—106, on which the majority relies, provides a public entity with an affirmative defense, which, if properly raised and proven, bars a plaintiff's right to recovery. *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 378 (1995). Section 3—106 provides in pertinent part that a local public entity shall not be liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes. Ill. Rev. Stat. 1989, ch. 85, par. 3—106. Whether public property is intended or permitted to be used for a recreational purpose within the meaning of section 3—106 requires a case-by-case examination of the nature of the property involved. *Bubb*, 167 Ill. 2d at 384.

The majority agrees with the Park District's contentions that the parking lots and walkways adjacent to Soldier Field were intended to be used by football fans on their way to games at the stadium. They agree that, because plaintiff possessed a ticket to a football game

and was injured while walking to the game, the walkway where plaintiff fell was part of the recreational purpose of Soldier Field.

In coming to this conclusion, the majority relies on appellate court cases which hold that section 3—106 immunity may apply to a facility or structure that increases the usefulness of public property intended or permitted to be used for recreational purposes. I believe the majority's holding is an unwarranted expansion of immunity to public entities which far exceeds the legislature's intent.

First, the appellate court cases on which the majority relies are readily distinguishable. Unlike the instant case, the plaintiffs in all those cases were barred from recovery under the Tort Immunity Act because their injuries occurred while they were actually *within* a recreational facility. See *Bubb*, 167 Ill. 2d at 382 (plaintiff injured on school property designated as part of the playground); *Conoway v. Hanover Park Park District*, 277 Ill. App. 3d 896, 900 (1996) (plaintiff injured in drainage ditch in a park); *Lewis v. Jasper County Community Unit School District No. 1*, 258 Ill. App. 3d 419, 420 (1994) (plaintiff injured on a pumphouse inside a playground); *Hanover Insurance Co. v. Board of Education*, 240 Ill. App. 3d 173, 174 (1992) (plaintiff injured on cracked concrete of a playground); *Annen v. Village of McNabb*, 192 Ill. App. 3d 711, 713 (1990) (plaintiff injured in restroom within a park); *Diamond v. Springfield Metropolitan Exposition Auditorium Authority*, 44 F.3d 599 (7th Cir. 1995) (plaintiff injured in tunnel that was part of a convention center).

Furthermore, in *Bubb* and *Diamond*, neither court was concerned with whether the site of the plaintiff's injury increased the usefulness of the recreational property. In *Bubb*, at issue was whether the sidewalk where plaintiff was injured was intended and permitted to be

used as part of the playground and, therefore, was within the scope of section 3—106. See *Bubb*, 167 Ill. 2d at 382-83. In *Diamond*, the issue before the court was whether the convention center where plaintiff was injured could be considered recreational property because it sponsored recreational as well as nonrecreational events. See *Diamond*, 44 F.3d at 604.

Moreover, that plaintiff in the instant case was injured while walking to the stadium to attend a football game should not influence the determination of whether the locale of her injury was recreational property. Immunity under section 3—106 "depends on the character of the property in question, not the activity performed at any given time." *Bubb*, 167 Ill. 2d at 379; see also *Larson v. City of Chicago*, 142 Ill. App. 3d 81, 87 (1986) (immunity did not apply to a roller skating injury on a public sidewalk because a public sidewalk is not recreational property like a park or playground); *John v. City of Macomb*, 232 Ill. App. 3d 877, 880 (1992) (immunity did not apply to an injury suffered at a band concert on a courthouse lawn because permitting that recreational activity did "not so alter the character of a public area not generally used for recreational activity that it would necessarily fall within the intended scope of section 3—106").

The 1986 amendment to the Tort Immunity Act evidences the legislature's intent to expand the scope of section 3—106 to include within its coverage any recreational property similar in nature to the types of properties listed in the statute. *Bubb*, 167 Ill. 2d at 378, citing *Bonfield v. Jordan*, 202 Ill. App. 3d 638, 645 (1990). However, unlike the majority, I do not believe that the legislature intended to provide immunity for all property that surrounds a recreational facility and which, incidentally, accommodates the public's use of the recreational facility.

As noted earlier, local public entities have a general statutory duty to exercise ordinary care to maintain public property. See Ill. Rev. Stat. 1989, ch. 85, par. 3—102. This court, when construing a legislative act, should consider each section in connection with other sections. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 318 (1989). Although section 3—106 of the Tort Immunity Act provides immunity for recreational property, providing immunity to any public property which somehow accommodates or makes more convenient the use of other public recreational property would totally eviscerate the duty codified in section 3—102. *Cf. Bubb*, 167 Ill. 2d at 382.

I believe that the use of a walkway adjacent to a Soldier Field parking lot is a mere convenience and is so incidental that it simply cannot be considered property intended or permitted to be used for recreational purposes. For the foregoing reasons, I would affirm the judgment of the appellate court.

JUSTICE HARRISON joins in this dissent.