2020 IL App (3d) 190762

Opinion filed October 6, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| STACY DONATH, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-19-0762 |
| | ) | Circuit No. 17-L-579 |
| | ) | |
| THE VILLAGE OF PLAINFIELD, | ) | Honorable |
| | ) | Raymond E. Rossi, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice McDade concurred in the judgment and opinion.
Justice Wright dissented, with opinion.

**OPINION**

¶ 1        The plaintiff, Stacy Donath, appeals from an order granting summary judgment in favor of

the defendant, Village of Plainfield (Village), in an action to recover damages for injuries sustained

when Donath tripped and fell on a public street while leaving a street festival.

¶ 2                                I. BACKGROUND

¶ 3        On July 3, 2017, Donath filed a complaint in negligence against the Village, alleging that

the Village was liable for injuries sustained when Donath tripped and fell on a public street. Donath

alleged the Village "had a duty to exercise ordinary care to operate, manage, maintain and/or

control *** a certain street and sewer grate located" on Fox River Street. Donath alleged that the Village "carelessly and negligently caused and/or permitted [Fox River Street] to become and remain in a dangerous condition." Specifically, Donath alleged that she tripped and fell on July 16, 2016, because Fox River Street was "broken, cracked and in disrepair"; Fox River Street's sewer grate was "in disrepair, sunken and unsafe"; and the Village failed to repair, barricade, or inspect and warn Donath of the dangerous conditions on Fox River Street.

¶ 4     The Village filed an answer to Donath's complaint without raising any affirmative defenses. Discovery later revealed that Donath tripped and fell on Fox River Street while leaving an evening concert at Plainfield Fest, which is a weekend street festival held in the downtown area of the Village. Plainfield Fest includes a bandstand, beer tents, carnival rides, and food and craft vendors on closed public streets and certain private property. As the Village's largest annual community event with a 20-plus year history, Plainfield Fest attracts thousands of daily attendees and 10,000 to 15,000 total attendees Friday through Sunday.



Map of the 2016 Plainfield Fest from the Trial Court Record

The partial closure of Fox River Street during Plainfield Fest was announced by the Village through a press release. The Village partially closed Fox River Street with barricades and a police checkpoint. The Village prohibited vehicular traffic on Fox River Street by everyone except its

2

residents, who obtained and displayed a pass from the Village to access the officer checkpoint, and business and street festival personnel.

¶ 5 By limiting vehicular traffic on Fox River Street, as depicted in the map above, the Village allowed pedestrians to use Fox River Street as a walkway between Plainfield Fest's carnival area 1 and the vendor area. This walkway also created a direct route for pedestrians to walk to and from Plainfield Fest, generally, and the designated parking area at Plainfield Central High School. Fox River Street was not, however, the location of any Plainfield Fest activities. When plaintiff tripped and fell, she was walking on Fox River Street to her vehicle near Plainfield Fest's designated parking area.

¶ 6 Discovery also confirmed Fox River Street is closed during an annual five-kilometer run. The five-kilometer run does not traverse Fox River Street, but like Plainfield Fest, portions of Fox River Street are closed for use by the five-kilometer run's personnel, police and fire department personnel, emergency management services, and vendors to make deliveries.

¶ 7 On September 27, 2019, the Village filed a motion for summary judgment under section 2-1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West 2018)). The Village argued "there is no issue of material fact concerning the recreational nature of the streets being used to accommodate the easy and safe movement of large crowds at" Plainfield Fest. According to the Village, if the public property was intended or permitted to be used for recreation, then, regardless of the primary purpose of the public property, section 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-106 (West 2016)) afforded immunity to the local public entity, unless the injuries were proximately caused by willful and wanton conduct.

3

¶ 8		In her response in opposition to summary judgment, Donath argued that her injuries were not sustained on recreational property. In her view, "Fox River Street was a *partially* closed residential street that pedestrians *could* use to access the festival, but was not itself 'recreational property' " (emphases in original) under section 3-106 of the Tort Immunity Act. Donath contended that she tripped and fell outside the perimeter of where any recreational activities may have been permitted a few days a year. Donath maintained "the street was closed merely to allow pedestrians to safely walk without the intrusion of motor vehicles in the road." At a minimum, Donath argued an issue of material fact existed as to whether a public street can be recreational property under section 3-106 of the Tort Immunity Act.

¶ 9		On November 8, 2019, the Village filed a reply to plaintiff's response in opposition to summary judgment. According to the Village, section 3-106 of the Tort Immunity Act focuses upon "whether the public property was intended or permitted to be used for recreational purposes." In the Village's view, under the existing case law, section 3-106 of the Tort Immunity Act applies to Fox River Street because "walkways increase the usefulness of the property being used for the actual recreation." Since street festival attendees could park at the designated parking area at Plainfield Central High School and then walk on the closed public streets, including Fox River Street, to Plainfield Fest, the Village argued section 3-106 of the Tort Immunity Act applied to incidents involving pedestrians walking on those public streets.

¶ 10		After a hearing on the motion, the circuit court granted summary judgment in favor of the Village, and Donath appealed.

¶ 11						II. ANALYSIS

¶ 12		Donath contends that the circuit court erred in applying the recreational property immunity exception and granting summary judgment to the Village. Donath argues that the portion of Fox

4

River Street where she fell was not recreational property pursuant to section 3-106 of the Tort Immunity Act. Donath further argues that the residential street where she fell was outside of any arguably recreational activity connected to the annual Plainfield Fest and it was not exclusively or primarily intended to increase the usefulness of recreational property. The Village contends that the circuit court properly granted summary judgment because there was no genuine issue of material fact precluding a finding that the recreational property exception applied. The Village argued that Fox River Street was, and is, utilized for recreational purposes all year round as a direct access point to Village Green Park, as well as during Plainfield Fest and other special events. Thus, the Village argues, since Donath presented no evidence of willful and wanton conduct by the Village, summary judgment was appropriate.

¶ 13        Summary judgment is appropriate only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018); *In re Estate of Hoover*, 155 Ill. 2d 402, 410-11 (1993). The case must hinge on a question of law, and the moving party's right to summary judgment must be "clear and free from doubt." *Hoover*, 155 Ill. 2d at 410. In this case, the relevant facts surrounding Donath's trip and fall incident are uncontested. On appeal, the parties only dispute the applicability of section 3-106 of the Tort Immunity Act.

¶ 14        The purpose of the Tort Immunity Act "is to protect local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1-101.1 (West 2016); accord *Harris v. Thompson*, 2012 IL 112525, ¶ 17. Importantly, our legislature "sought to prevent public funds from being diverted from their intended purpose to the payment of damage claims." *Harris*, 2012 IL 112525, ¶ 17. Thus, the Tort Immunity Act "grants only immunities and

defenses." 745 ILCS 10/1-101.1 (West 2016); accord *Harris*, 2012 IL 112525, ¶ 17; *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 378 (1995).

¶ 15        Coupled with the overall purpose of the Tort Immunity Act, section 3-106 affords immunity to local public entities "to encourage and promote the development and maintenance of parks, playgrounds, and other recreational areas." *Moore v. Chicago Park District*, 2012 IL 112788, ¶¶ 9, 22. Clearly, our legislature recognized, without affording immunity to local public entities, "public property intended or permitted to be used for recreational purposes" could suffer or become less available to the public. 745 ILCS 10/3-106 (West 2016).

¶ 16        Notably, the Tort Immunity Act does not create duties but, instead, "codifies existing common law duties[ ] to which the delineated immunities apply." *Harris*, 2012 IL 112525, ¶ 17; see also *Bubb*, 167 Ill. 2d at 377-78. If a court finds a duty exists, then it will address the separate issue of whether the Tort Immunity Act applies. *Harris*, 2012 IL 112525, ¶ 17.

¶ 17        A recitation of the relevant provisions of the Tort Immunity Act is in order. Section 3-102(a) provides:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3-102(a) (West 2016).

6

In addition, the Village relies upon the immunity contained in section 3-106 of the Tort Immunity Act, which states:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." *Id.* § 3-106.[1]

Section 3-106 provides an affirmative defense that, if "properly raised and proven" by a defendant, bars a plaintiff's "right to recovery," unless there is willful and wanton conduct proximately causing injury. *Bubb*, 167 Ill. 2d at 378; 745 ILCS 10/3-106 (West 2016).

¶ 18        As a preliminary matter, the Village failed to raise section 3-106 as an affirmative defense in its answer or in a motion to dismiss under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)). Generally, under section 2-613(d) of the Code (*id.* § 2-613(d)), this procedural oversight would result in a waiver of section 3-106 immunity. See *Hanley v. City of Chicago*, 343 Ill. App. 3d 49, 53-54 (2003). However, our court has found, in the context of the Tort Immunity Act, "an affirmative defense is not waived, despite the fact that it was not raised in an answer to a complaint, if the defense is subsequently raised without objection in a motion for summary judgment." *Alexander v. Consumers Illinois Water Co.*, 358 Ill. App. 3d 774, 780 (2005); accord *Hanley*, 343 Ill. App. 3d at 53-54. This authority applies here since plaintiff has never objected to the Village's decision to raise section 3-106 for the first time in a motion for summary

---

[1]"Willful and wanton conduct" under the Tort Immunity Act means "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." See 745 ILCS 10/1-210 (West 2016).

judgment. As such, we are not constrained by principles of waiver and may reach the merits. See *Alexander*, 358 Ill. App. 3d at 780; *Hanley*, 343 Ill. App. 3d at 53-54.

¶ 19 Donath relies on a case from this court in support of her argument that there are questions of fact regarding the recreational character of the street precluding summary judgment, *John v. City of Macomb*, 232 Ill. App. 3d 877 (1992). Similar to Donath, the plaintiff in *John* attended an annual festival to listen to a band, which was playing on the courthouse lawn. *Id.* at 879. The plaintiff fell after stepping into a parking meter hole on the courthouse lawn, which was located near a closed "inside street" surrounding the courthouse. *Id.* Our court found that whether the plaintiff's fall in *John* took place in an area that was intended or permitted to be used for recreational purposes remained an issue of material fact. *Id.* at 879-80. In making that finding, this court questioned whether permitting a band concert on the courthouse lawn, which was not an area generally used for recreational activity, altered the character of the lawn. *Id.* at 880.

¶ 20 *John* was cited with approval by our supreme court in *Bubb*, 167 Ill. 2d at 379, for the holding that immunity depends not on the activity performed at any given time but on the character of the property as a whole. In *Bubb*, a student was injured when she rode her bicycle off the edge of a sidewalk while leaving school. The sidewalk in that case was painted with yellow four-square lines and was intended to be used as part of the school playground, so the school district was entitled to summary judgment on the basis that there was no genuine issue of material fact that the sidewalk where the student was injured was intended to be used for recreational purposes. *Id.* at 384. When determining the character and nature of public property, courts should consider whether the public property "has been used for recreation in the past or whether recreation has been encouraged there." *Id.* at 382. However, the *Bubb* court cautioned, "[p]roviding immunity to any public property where recreation might occur would eviscerate the duty codified in section 3-102"

8

because, "at some point, the use of public property for recreation may be so incidental that section 3-106" should not apply. *Id.*

¶ 21　　In this case, the record establishes Fox River Street is a public street, albeit located near a park, that is occasionally closed during events in the Village. The record also establishes that Fox River Street itself has never been used for recreation. Based on our supreme court's guidance in *Bubb*, we conclude the undisputed material facts reveal Fox River Street is not "similar in nature to the types of properties listed in" section 3-106, as to itself be "intended or permitted to be used for recreational purposes." See *id.* at 378, 382-83; 745 ILCS 10/3-106 (West 2016).

¶ 22　　Our analysis does not end here, though, because our supreme court provided further guidance on the scope of section 3-106 immunity in the case of *Sylvester v. Chicago Park District*, 179 Ill. 2d 500 (1997). *Sylvester* discusses when section 3-106 of the Tort Immunity Act may immunize a local public entity from injuries sustained on nonrecreational public property, such as Fox River Street in the case at bar, "that increase[s] the usefulness of public property intended or permitted to be used for recreational purposes." *Id.* at 508; 745 ILCS 10/3-106 (West 2016).

¶ 23　　In *Sylvester*, 179 Ill. 2d at 501, a spectator was injured on a walkway that connected a park district parking lot to nearby Soldier Field. The Illinois Supreme Court held that immunity under section 3-106 of the Tort Immunity Act applied because the walkways and parking lots adjacent to Soldier Field, while not primarily recreational themselves, increased the usefulness of Soldier Field, which was recreational. *Id.* at 508. Our supreme court emphasized that the parking lot where the spectator fell "was an integral part of the Soldier Field recreational facility" and held the circuit court erred by focusing only on whether the parking lot by itself was used for recreational purposes. *Id.* at 509-510.

¶ 24	A few years later, the Illinois Supreme Court in *Rexroad v. City of Springfield*, 207 Ill. 2d 33 (2003), distinguished *Sylvester* on the basis that Soldier Field's adjacent parking lots and walkways served to benefit Soldier Field only and thus increased the usefulness of the stadium, while a high school parking lot can provide access to several different areas of the school not used for recreational purposes. *Id.* at 41-42 (the plaintiff was injured while crossing a parking lot that served the entire school and only incidentally the football field). The court held that, if the use is only incidental to the recreational facility, then immunity under section 3-106 of the Tort Immunity Act would not apply. *Id.* at 43.

¶ 25	Thus, to sustain the grant of summary judgment to the Village, we must find that there is no genuine issue of fact that Fox River Street increases the usefulness of public property intended or permitted to be used for recreational purposes. Primarily, the Village argues that this public property is the area blocked off for the Plainfield Fest and the annual five-kilometer run. As the case law indicates, in determining whether property is recreational in nature for the purposes of immunity, the focus is on the character of the property as a whole, not the activity performed at any given time. *Bubb*, 167 Ill. 2d at 379. Donath was injured when she fell on a public street, while she was leaving a festival that took place on other public streets. There is, at a minimum, a question of material fact whether a festival or a race on public streets a few days a year is sufficient to alter the character of the public streets and make them recreational in nature. See *John*, 232 Ill. App. 3d at 880 ("permitting a band concert, without more, does not so alter the character of a public area not generally used for recreational activity that it would necessarily fall within the intended scope of section 3-106 of the [Tort Immunity] Act"). But see *Bubb*, 167 Ill. 2d at 382 (four-square lines painted on a sidewalk evinced an intent to use that part of the public sidewalk for recreational purposes).

10

¶ 26    The Village also argues that Fox River Street is recreational in nature because it increases the usefulness of Village Green Park by providing access to the park all year round. We find that argument unavailing and an example of when the use of public property for recreation may be so incidental that immunity would not apply. See *Bubb*, 167 Ill. 2d at 382 ("Providing immunity to any public property where recreation might occur would eviscerate the duty codified in section 3-102."). The record indicates that Fox River Street is a public street, connecting with other public streets. There are no allegations or evidence in the record that Fox River Street was, for example, constructed specifically to provide access to the park. See *Callaghan v. Village of Clarendon Hills*, 401 Ill. App. 3d 287, 293 (2010) (summary judgment on the basis of immunity upheld because the sidewalk where the plaintiff fell was adjacent to the park, maintained by the park, and included in the development of the park to provide access).

¶ 27    We find that there are questions of material fact regarding whether the use of Fox River Street as a pedestrian walkway for a few days a year increased the usefulness of any public property intended or permitted to be used for recreational purposes. Thus, the circuit court erred in granting the Village summary judgment on the basis of immunity under section 3-106 of the Tort Immunity Act.

¶ 28                                    CONCLUSION

¶ 29    The judgment of the circuit court of Will County is reversed and remanded for further proceedings.

¶ 30    Reversed and remanded.

¶ 31    JUSTICE WRIGHT, dissenting:

¶ 32    Initially, I believe the Village forfeited immunity under section 3-106. I write separately to discuss, in part, my view that this court should have the authority to reverse the trial court's grant

of summary judgment due to the Village's procedural oversights under section 2-613(d) of the Code. Section 2-613(d) provides:

> "The facts constituting *any* affirmative defense \*\*\*, and *any* defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the complaint, counterclaim, or third-party complaint, in whole or in part, and *any* ground or defense, whether affirmative or not, which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise, *must be plainly set forth in the answer or reply*." (Emphases added.) 735 ILCS 5/2-613(d) (West 2018).

Without question, the Village failed to "plainly set forth" section 3-106 "in [its] answer or reply." See *id.* However, perhaps unaware of the mandates of section 2-613(d) or its application in the case law, plaintiff did not object to the Village's motion for summary judgment on forfeiture grounds. Thus, the majority correctly recognizes and then follows the existing case law holding that the Village's forfeiture was inconsequential based on the posture of this record. See *Alexander*, 358 Ill. App. 3d at 780; *Hanley*, 343 Ill. App. 3d at 53-54.

¶ 33        In this separate offering, I caution against such a reading of section 2-613(d), which extinguishes any incentive for a defendant to fully develop its pleadings, both initially and through amendments, before moving for summary judgment. Notably, the Tort Immunity Act was designed by our legislature to expressly "grant[ ] only immunities and defenses." See 745 ILCS 10/1-101.1(a) (West 2016); *Harris*, 2012 IL 112525, ¶ 17; *Bubb*, 167 Ill. 2d at 378. As such, the Tort Immunity Act serves only to benefit the municipality defending against a lawsuit.

¶ 34        Therefore, I believe defendants, like the Village, must be particularly careful to preserve the immunities and defenses afforded by the Tort Immunity Act. I respectfully disagree that, when

12

a defendant fails to do so by complying with section 2-613(d), the negative consequences of a forfeiture should be felt solely by the plaintiff. It seems counterintuitive that a defendant, upon filing a motion for summary judgment, may resurrect an affirmative defense that was previously overlooked and never discussed on the record. Nevertheless, in the absence of guidance from our supreme court, I agree with the majority's holding that the negative consequences arising from this appeal's procedural posture must rest on plaintiff's shoulders.

¶ 35    Turning to the merits, I respectfully disagree that this matter should be reversed and then remanded to the trial court due to outstanding issues of material fact. I believe the facts are undisputed and justify the trial court's decision granting summary judgment to the Village under section 3-106. Therefore, ignoring the Village's forfeiture, I would affirm the trial court.

¶ 36    Initially, in my view, our prior decision in *John* largely contains *dicta* and is not helpful to our resolution of this appeal. In *John*, the skeletal facts prevented our court from deciding whether the courthouse lawn or the "inside street" had been altered into public property "intended or permitted to be used for recreational purposes" under section 3-106. See *John*, 232 Ill. App. 3d at 879-80. Based on the absence of factual deficiencies in the present appeal, I respectfully find *John* unpersuasive and not controlling. See *id.*

¶ 37    Importantly, an application of section 3-106 must be based on a case-by-case examination of the nature and past use of the public property. See *Bubb*, 167 Ill. 2d at 384. In my view, the undisputed facts contained in this unique record convincingly establish the purpose of the Village's public street closures was to alter, significantly, the character of those public streets from a nonrecreational to a recreational nature. The significant measures taken by the Village subordinated the primary and independent purpose of its public streets for vehicular traffic to the recreational purposes of Plainfield Fest. I respectfully disagree with the suggestion that the

13

Village's use of the public streets for recreation, pursuant to those significant measures, was so incidental that section 3-106 should not apply. See *id.* at 382. Therefore, under section 3-106, I would conclude that the streets comprising Plainfield Fest were "public property intended or permitted to be used for recreational purposes." 745 ILCS 10/3-106 (West 2016).

¶ 38 Further, for purposes of Fox River Street, I would follow *Sylvester*. Based on that case, I conclude the Village converted Fox River Street into a "walkway[ ] *** adjacent to" Plainfield Fest, which undisputedly increased the usefulness of the other public streets serving as the location for the annual street festival. See *Sylvester*, 179 Ill. 2d at 508. As such, I would also hold that the circuit court correctly found section 3-106 immunizes the Village from tort liability because Fox River Street was "an integral part" of Plainfield Fest as a whole. See *id.* at 509.

¶ 39 In support of this conclusion, I point out that the layout of the area dedicated to Plainfield Fest is not disputed. Further, the record consistently evidences that 10,000 to 15,000 persons were expected to attend Plainfield Fest. These attendees could not simply drive into the immediate area of the street festival and park where the festivities were ongoing. Due to this reality, the Village converted the Plainfield Central High School parking lot into a designated parking area for Plainfield Fest. The Village also erected barricades and a police checkpoint at the entrance to Fox River Street, which served to limit vehicular traffic on that street to residents displaying a Village-issued pass and other street festival or business personnel.

¶ 40 In this way, the Village converted Fox River Street into a "walkway[ ] *** adjacent to" Plainfield Fest. See *id.* at 508. As a result of the conversion, pedestrians could safely walk on Fox River Street to and from the designated parking area and Plainfield Fest, generally. Further, within Plainfield Fest, pedestrians could safely walk on Fox River Street to and from carnival area 1 and

14

the vendor area. In light of these undisputed facts, I believe Fox River Street was undoubtedly useful to the recreational purposes of Plainfield Fest.

¶ 41        In conclusion, I respectfully disagree with the majority that there are outstanding issues of material fact that precluded the trial court from deciding the motion for summary judgment on the merits. Based on this record, which requires our court to ignore the Village's forfeiture of section 3-106, I would affirm the trial court's decision in favor of the Village. Importantly, the trial court's ruling was consistent with and advances the legislative intent of section 3-106 by encouraging and promoting the recreational purposes of the Village's largest community event. See *Harris*, 2012 IL 112525, ¶ 17; *Moore*, 2012 IL 112788, ¶¶ 9, 22.

**No. 3-19-0762**

| | |
|---|---|
| **Cite as:** | *Donath v. Village of Plainfield*, 2020 IL App (3d) 190762 |
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 17-L-579; the Hon. Raymond E. Rossi, Judge, presiding. |
| **Attorneys for Appellant:** | Steven A. Berman, of Anesi, Ozmon, Rodin, Novak & Kohen, Ltd., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Megan M. Olson and James B. Harvey, of Tracy, Johnson & Wilson, of Joliet, for appellee. |