HANOVER INSURANCE COMPANY, as subrogee of Mar-Lu Masonry, Inc., *et al.*, Plaintiff-Appellee, v. BOARD OF EDUCATION OF THE CITY OF CHICAGO, Defendant-Appellant.

First District (1st Division)   No. 1—92—0626

Opinion filed December 14, 1992.

William A. Morgan and Iris E. Sholder, both of Board of Education of City of Chicago, of Chicago, for appellant.

Crystal, Heytow & Warnick, P.C., of Chicago (Michael S. Sherman and Robin Kaplan, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

This case comes before this court as a permissive appeal filed by defendant Board of Education of the City of Chicago (Board), pursuant to Illinois Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)), and concerns whether the Board is immune to a suit filed by plaintiff Hanover Insurance Company (Hanover) as subrogee of plaintiff Mar-Lu Masonry, Inc. (Mar-Lu), and plaintiff Tucker Pitts. On February 11, 1992, the circuit court of Cook County entered an order finding that there was a question of law for which a substantial difference of opinion exists, namely:

> "Does §3—106 of the Tort Immunity Act bar a cause of action for negligence based on the condition of a school playground, where the injured party entered the property at the request of the property owner (Board) to make masonry repairs and did not enter the playground for recreational purposes[?]"

For the following reasons, we answer this question in the affirmative.

The record on appeal discloses the following facts. On or about April 30, 1987, the Board was the owner of the Johnson Elementary School in Chicago, Illinois. At this time, the Board had retained Mar-Lu to perform masonry work at the school. Tucker Pitts, a Mar-Lu employee, slipped and fell on cracked and uneven concrete located on the playground of the school while performing masonry repairs.

Hanover had issued an insurance policy to Mar-Lu wherein Hanover agreed to compensate Mar-Lu employees for injuries sustained in the course of their employment. Pursuant to this policy and the demand of Mar-Lu, Hanover paid $10,671.94 to indemnify Pitts for losses resulting from his injury.

Hanover, as subrogee of Mar-Lu and Pitts, then filed suit against the Board. Hanover alleged that Pitts' injuries were caused by the Board's negligent maintenance of the playground. The Board moved to dismiss the complaint under section 2—619(a)(9) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9)). The Board asserted that it was immune from suit under the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1987, ch. 85, pars. 1—101 through 9—107 (Tort Immunity Act or Act).

On January 23, 1992, the trial court entered an order denying the Board's motion to dismiss. Subsequently, the Board asked the trial court to certify the question for interlocutory appeal. The trial court entered an order posing the certified question on February 11, 1992.

The Board then applied for leave to appeal to this court, which was allowed on April 20, 1992.

The certified question is one of statutory construction. "The primary rule of statutory construction is to ascertain and effectuate the legislature's intent." (*Annen v. Village of McNabb* (1990), 192 Ill. App. 3d 711, 713, 548 N.E.2d 1383, 1384.) The best indicator of that intent is the language of the statute itself; when the language is clear and unambiguous, courts will not read exceptions into the statute. (*Beghr Willowbrook Venture v. Village of Willowbrook* (1991), 217 Ill. App. 3d 614, 617, 576 N.E.2d 853, 855.) The express purpose of the Tort Immunity Act is "to protect local public entities *** from liabilities arising from the operation of government." Ill. Rev. Stat. 1987, ch. 85, par. 1—101.1(a).

■ Section 3—106 of the Tort Immunity Act (Ill. Rev. Stat. 1987, ch. 85, par. 3—106) provides:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury."

It is undisputed that the Board is a local public entity and that the playground in this case is public property within the meaning of the Act. (Ill. Rev. Stat. 1987, ch. 85, pars. 1—206, 3—101.) The issue is whether the phrase "intended or permitted to be used for recreational purposes" refers to the character of the property or to the use of the property by the injured party.

■ When construing a statute, a court should consider each section in connection with every other section, rather than in isolation. (See *Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 318, 547 N.E.2d 437, 443.) Plaintiff points to the title of section 3—106, "Property Used for a Recreational Purpose," as evidence that the trial court's ruling was correct. Titles or captions provided by the compiler or publisher of Illinois Revised Statutes are not part of the official title of the statute and cannot limit the statute's plain meaning. (*People v. Jones* (1991), 217 Ill. App. 3d 175, 177, 576 N.E.2d 1138, 1138, *rev'd on other grounds* (1992), 149 Ill. 2d 288, 595 N.E.2d 1071, citing *People v. Flaherty* (1947), 396 Ill. 304, 313-14, 71 N.E.2d 779, 784; *People v. Trigg* (1968), 97 Ill. App. 2d 261, 269-70, 240 N.E.2d 130, 134.) Moreover, the title says nothing about whether the

individual use of the property controls over the general or common use of the property.

■■ ■ Construing the language of the Act as a whole, we note that section 3—102(a) provides in part:

"Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care *of people whom the entity intended and permitted to use the property* in a manner in which and at such times as it was reasonably foreseeable that it would be used ***." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a).)

Section 3—102(a) addresses "intended and permitted" *users* of property of a local public entity. (See, *e.g., Prokes v. City of Chicago* (1991), 208 Ill. App. 3d 748, 567 N.E.2d 592.) Section 3—106 addresses "public property intended or permitted to be used for recreational purposes." (Ill. Rev. Stat. 1989, ch. 85, par. 3—106.) In this latter context, the phrase "intended or permitted" modifies "public property" rather than "people." Had the legislature intended to refer to intended or permitted users of public property in section 3—106, it could have used language identical to that used in section 3—102(a). Thus, we conclude that the scope of section 3—106, when viewed in the context of the entire Act, is determined by the character of the property, rather than the injured party's use of that property.

Even if section 3—106 were deemed ambiguous in this respect, the rules of statutory construction would support our conclusion. Turning to the purpose of the Act, plaintiff argues in its brief that "when enacting [s]ection 3—106, the legislature was attempting to make certain that public entities would not need to serve as insurers against all injuries which may occur on property used for recreational purposes." Plaintiff relies on *Majewski v. Chicago Park District* (1988), 177 Ill. App. 3d 337, 532 N.E.2d 409, for this proposition, but no such statement appears there. Even if it did, it would not answer the certified question in this case. This court has held that the purpose of section 3—106 is to encourage the development and maintenance of parks, playgrounds and similar areas. (*Larson v. City of Chicago* (1986), 142 Ill. App. 3d 81, 86, 491 N.E.2d 165, 168.) We note that this description does not focus on the use of those areas.

This court may also compare the Act to other statutes upon related subjects, even if the other statutes are not strictly *in pari materia.* (*Board of Trustees of Community College District No. 508 v. Taylor* (1983), 114 Ill. App. 3d 318, 323, 448 N.E.2d 1171, 1174.) The

Recreational Use of Land and Water Areas Act (Ill. Rev. Stat. 1987, ch. 70, pars. 31 through 37) (RULWAA) addresses both immunity and the recreational use of property. Under this statute, the general rule is that "an owner of land owes no duty of care to keep the premises safe for *entry or use by any person for recreational or conservation purposes.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 70, par. 33.) One of the exceptions to the rule is "[f]or injury suffered in any case where the owner of land charges the *person or persons who enter or go on the land for the recreational use thereof.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 70, par. 36(b).

Therefore, the scope of immunity under the RULWAA is based on the injured party's intended use of the land. If the legislature intended that the scope of immunity afforded by section 3—106 be based on each individual's use of the land, it could have employed language of the sort used in the RULWAA.

Aside from the language of section 3—106 and the language of the RULWAA, the case law interpreting section 3—106 further supports our conclusion. For example, in *Larson v. City of Chicago* (1986), 142 Ill. App. 3d 81, 491 N.E.2d 165, the plaintiff sued for injuries she sustained while roller skating on a public sidewalk in a residential neighborhood. (*Larson*, 142 Ill. App. 3d at 83, 491 N.E.2d at 166.) On appeal, the City of Chicago asserted "that the scope of immunity granted by section 3—106 should be determined by how the public property is used by the injured party." (*Larson*, 142 Ill. App. 3d at 86, 491 N.E.2d at 168.) This court stated that "this would be an unwarranted interpretation of section 3—106." (*Larson*, 142 Ill. App. 3d at 86, 491 N.E.2d at 168.) The *Larson* court explained that a public sidewalk in a residential neighborhood is not an area designated for recreational purposes, such as a park or playground. (*Larson*, 142 Ill. App. 3d at 87, 491 N.E.2d at 168.) Thus, the *Larson* court concluded that it is the character of the property, rather than the injured party's use of that property, that triggers section 3—106.

Plaintiff argues that this court has looked to the plaintiff's use of the property in cases after *Larson*. For example, in *Ramos v. Waukegan Community School District No. 60* (1989), 188 Ill. App. 3d 1031, 544 N.E.2d 1302, this court upheld a ruling that a school district was immune where the plaintiff tripped while skipping rope on a cracked sidewalk on school property. The plaintiff argued that section 3—106 did not apply because she was not injured on the school playground. Although the *Ramos* court did note that plaintiff had been using the sidewalk for a recreational purpose at the time of her injury, the court extended the scope of immunity to the sidewalk "because of the com-

mon use of nonplayground school property to conduct such activities."
(*Ramos*, 188 Ill. App. 3d at 1037, 544 N.E.2d at 1306.) Therefore, like
*Larson, Ramos* turns on the common use or character of the property, rather than the use of a specific person.

Similarly, in *Annen*, this court held that section 3—106 immunized
a municipal corporation where the plaintiff was injured while using a
rest room located in a park. Plaintiff notes that the *Annen* court
stated:

> "While a restroom building itself is not intended to be used for
> recreational purposes, it allows a park user to continue using
> the park without having to leave the park to use restroom facil-
> ities." (*Annen*, 192 Ill. App. 3d at 713, 548 N.E.2d at 1384.)

Immediately prior to the above quotation, however, the *Annen* court
stated: "A restroom facility located within a park is a part of the
park." (*Annen*, 192 Ill. App. 3d at 713, 548 N.E.2d at 1384.) Again,
this court focused on the character of the area as a whole, rather than
whether the injured person was engaged in a nonrecreational activity
at the time of injury.

Finally, plaintiff contends that public policy dictates that the scope
of section 3—106 should be determined by each person's use of the
property. Plaintiff relies on cases stating the general rule that a pos-
sessor of land owes a duty of reasonable care to business invitees.
However, plaintiff offers no authority for the proposition that this
court may disregard the statutory scheme of the Tort Immunity Act
to apply that rule.

In sum, regardless of whether this court examines the plain lan-
guage of section 3—106 by itself, in conjunction with the RULWAA or
this court's precedent, we conclude that the immunity afforded by
section 3—106 arises from the character or common use of the prop-
erty, not from the actual or intended use of that property by the in-
jured party.

Accordingly, we answer the certified question in the affirmative,
reverse the order of the circuit court of Cook County that denied the
Board's motion to dismiss and remand the cause for further proceed-
ings consistent with this opinion.

Reversed and remanded.

O'CONNOR and MANNING, JJ., concur.