**Doris DIAMOND, Plaintiff–Appellant,**

**v.**

**SPRINGFIELD METROPOLITAN EXPOSITION AUDITORIUM AUTHORITY, Defendant–Appellee.**

No. 94–2337.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 6, 1994.

Decided Jan. 10, 1995.

---

Patrick v. Reilly, David A. Rolf (argued), Sorling, Northrup, Hanna, Cullen & Cochran, Springfield, IL, for plaintiff-appellant.

Frederick P. Velde, Shannon Taylor, Heyl, Royster, Voelker & Allen, Springfield, IL, Karen L. Kendall (argued), Craig L. Unrath, Heyl, Royster, Voelker & Allen, Peoria, IL, for defendant-appellee.

Before COFFEY, MANION and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Doris Diamond brought a negligence action against the Springfield Metropolitan Exposition Auditorium Authority ("SMEAA"), the owner and operator of a public convention center located in Springfield, Illinois, claiming she suffered physical injuries as a result of a fall at the SMEAA's convention center. The district court granted the SMEAA's motion for summary judgment, ruling that Diamond's claim was barred by the Illinois Local Government and Government Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/3–106. We affirm.

I.

The SMEAA owns and operates the Prairie Capital Convention Center in Springfield, Illinois, a multi-purpose facility used for meetings, shows, expositions, rodeos, boxing

matches, wrestling events, basketball games and tournaments, karate tournaments, and other public events. The SMEAA was created pursuant to sections 205/3 and 4 of the Metropolitan Civic Center Act, 70 ILCS 205/3 and 4, which authorized counties or groups of counties to form authorities to promote, operate, and maintain expositions, conventions, theatrical, sports and cultural activities. The SMEAA is authorized by statute to plan, sponsor, hold, arrange, and finance fairs, exhibits, shows, and events.

It shall be the duty of the authority to promote, operate, and maintain expositions and conventions from time to time in the metropolitan area and in connection therewith to arrange, finance and maintain industrial, cultural, educational, trade and scientific exhibits and to construct, equip and maintain auditoriums and exposition buildings for such purposes. The authority is granted all rights and powers necessary to perform such duties.

70 ILCS 345/4; *see also* 70 ILCS 345/5(b).

Diamond was injured on July 9, 1993, while she was on her way to attend a career-related conference for sexual abuse counselors at the Convention Center. Diamond tripped in the doorway to an underground tunnel leading to the Convention Center. In her negligence action against the SMEAA, Diamond alleged that she sustained broken bones and other permanent physical injuries as the result of her fall.

The SMEAA moved to dismiss [1] Diamond's complaint, asserting that it was immune from liability for negligence under section 3–106 of the Tort Immunity Act, which provides that

[n]either a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton misconduct proximately causing such injury.

745 ILCS 10/3–106. The SMEAA contended that Diamond's injuries occurred on "public property intended or permitted to be used for recreational purposes" within the meaning of the Tort Immunity Act. To support its motion, the SMEAA filed an affidavit by Judith Meiron, the General Manager of the Convention Center, which stated that

[t]he Prairie Capital Convention Center is property intended or permitted to be used for recreational purposes. Recreational activities which have been permitted on the premises in the past include, but are not limited to, City basketball tournaments, World Wrestling Federation events, rodeos, boxing matches and karate tournaments.

Diamond opposed the SMEAA's motion, arguing that the Tort Immunity Act did not preclude her suit because the Convention Center could not be characterized as a recreational facility within the meaning of the Act and because her purpose for visiting the Convention Center had nothing to do with recreation.

The district court entered summary judgment in favor of the SMEAA, ruling that section 3–106 of the Tort Immunity Act barred Diamond's claim. The court observed that "[t]he determinative question in this case is whether the Prairie Capital Convention Center is public property intended or permitted to be used for recreational purposes," and thus "the question is what is the character of the Convention Center, not why was Plaintiff at the Convention Center." The court found that

[t]he Convention Center is a building which provides the people of Springfield and surrounding areas a place to hold public events. A great many of these events are recreational in nature. Even if some of these events are not strictly recreational, they are still examples of members of the community being offered available space to help facilitate their needs. The development and maintenance of buildings like the Convention Center should be en-

---

1. We are of the opinion that the district court's action in treating SMEAA's motion, including its affidavits in support of the motion to dismiss Diamond's complaint, as a motion for summary judgment was proper. Fed.R.Civ.P. 12(b).

couraged. Since the Convention Center is used for recreational purposes a large percentage of the time, the Court concludes that for the purposes of section 3–106 the Convention Center is public property intended to be used for recreational purposes.

## II.

■ We review the district court's grant of summary judgment *de novo,* drawing all reasonable inferences from the record in the light most favorable to the non-moving party. *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir.1994); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "The non-moving party cannot rest on the pleadings alone, but must identify specific facts to establish that there is a genuine triable issue." *Donovan,* 17 F.3d at 947. "Unless we find evidence sufficient to sustain a jury verdict in favor of the non-moving party, we will affirm the grant of summary judgment." *Id.* As a federal court sitting in diversity, we must also determine whether the district court properly applied the relevant state substantive law. *Colip v. Clare,* 26 F.3d 712, 714 (7th Cir.1994).

The sole issue raised by this appeal is whether section 3–106 of the Tort Immunity Act immunizes the SMEAA from liability for negligence in its operation of a public, multi-purpose convention center. Our determination of this issue turns on the proper interpretation of the phrase "public property intended or permitted to be used for recreational purposes" in section 3–106 of the Tort Immunity Act. This case presents a question of Illinois law that to date has not been

addressed by the Illinois Supreme Court. Our duty is to determine, as best we can, how this dispute would be resolved by the Illinois Supreme Court. *Todd v. Societe BIC, S.A.,* 21 F.3d 1402, 1405 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 359, 130 L.Ed.2d 312 (1994).

Section 3–106 of the Tort Immunity Act provides immunity to local public entities against negligence claims arising from "the existence of a condition of any public property intended or permitted to be used for recreational purposes." 745 ILCS 10/3–106; *Hanover Ins. Co. v. Board of Education,* 240 Ill.App.3d 173, 181 Ill.Dec. 110, 112, 608 N.E.2d 183, 185 (1992); *Ramos v. Waukegan Community Unit School District,* 188 Ill. App.3d 1031, 136 Ill.Dec. 527, 531, 544 N.E.2d 1302, 1306 (1989). Section 3–106 was intended "to encourage the development and maintenance of parks, playgrounds and similar [recreational] areas." *Hanover,* 181 Ill. Dec. at 112, 608 N.E.2d at 185. The relevant inquiry with respect to immunity under the Act is based on "the character of the property, rather than the injured party's use of that property." *Id.* (section 3–106 immunity applied where plaintiff was injured on a playground while performing masonry repairs); *Ramos,* 136 Ill.Dec. at 531, 544 N.E.2d at 1306 (immunity applied where plaintiff was engaged in a recreational activity on non-playground school property).

Diamond argues that the Convention Center is neither "intended [nor] permitted to be used for recreational purposes" within the meaning of the Tort Immunity Act because the recreational activities held at the Center—including basketball tournaments, wrestling events, rodeos, boxing matches and karate tournaments—are all spectator events. One Illinois court has held that a facility that was used for a spectator event on one occasion cannot be characterized as recreational property within the scope of section 3–106. *See, e.g., John v. Macomb,* 232 Ill.App.3d 877, 173 Ill.Dec. 375, 377, 596 N.E.2d 1254, 1256, *appeal denied,* 147 Ill.2d 627, 180 Ill.Dec. 150, 606 N.E.2d 1227 (1992). In *John,* the plaintiff was injured while attending a public-

ly-sponsored festival held on the courthouse lawn. In denying the government's motion for summary judgment based on tort immunity under section 3–106, the court stated:

> From the record it cannot be determined whether "Heritage Days" is a recreational use of the courthouse lawn. Nor does the record disclose whether defendants customarily permitted any recreational activity on the lawn. The record indicates that on the night in question a band played. But permitting a band concert, without more, does not so alter the character of a public area not generally used for recreational activity that it would necessarily fall within the intended scope of section 3–106 of the Act. In our opinion, the legislative intent of the Act is to immunize governmental entities from liability for simple negligence in areas where public activities of a sportive nature, as opposed to stage entertainment, are permitted. Similarly, the record discloses that a concession stand was permitted on the premises. This is surely a business pursuit—not one that, in itself or combined with the proximity of a band concert, renders the grounds a recreational facility for purposes of section 3–106 of the Act.

*John,* 173 Ill.Dec. at 377, 596 N.E.2d at 1256. In *John,* the only evidence presented on the recreational use of the courthouse lawn was the "Heritage Days" festival itself, which included a band concert. This paucity of evidence precluded the court from ascertaining whether the courthouse lawn was customarily either intended or permitted to be used for recreational purposes. *Id.*

■ Unlike the defendant in *John,* the SMEAA presented the district court with uncontradicted evidence that the Convention Center had hosted several public activities of a "sportive nature" in the past, including city basketball tournaments, wrestling events, rodeos, boxing matches, and karate tournaments. These activities are not only "sportive" in nature, but recreational by definition.

"Recreation" is synonymous with "diversion" or "play." Webster's Third New Int'l Dictionary 1899 (1981); *see also Frazier v. Norfolk,* 234 Va. 388, 362 S.E.2d 688, 690 (1987) (a facility is recreational "where members of the public are entertained and diverted, either by their own activities or by the activities of others"). Without question, the participants in—as well as the spectators of—the basketball tournaments, wrestling events, rodeos, boxing matches, and karate tournaments held at the Convention Center were engaged in some form of diversion or play. The fact that some members of the public enjoyed the diversion offered by these events as spectators does not alter their recreational character.

■ Diamond also argues that section 3–106 immunity applies only to facilities used *primarily* for recreational purposes, and that the Convention Center's primary use raises a genuine issue of material fact. In *Bubb v. Springfield School District 186,* 263 Ill. App.3d 942, 200 Ill.Dec. 813, 636 N.E.2d 4 (1994),[2] the court stated that section 3–106 immunity applies "if injury occurs while plaintiff is engaged in a recreational activity in an area primarily used for recreational activity," and that "where property which is primarily nonrecreational is actually used for nonrecreational purposes there should be no immunity." *Bubb,* 200 Ill.Dec. at 815, 636 N.E.2d at 6. In *Bubb,* the plaintiff was injured while riding her bicycle on a school sidewalk. The complaint alleged that the school district was negligent in failing to maintain the concrete sidewalk in a safe condition. The court imposed its own unique construction of the test for determining the character of public property, ruling that "there is immunity under section 3–106 for dual-purpose property where the primary purpose is recreational, however it is used; there is immunity under section 3–106 for dual-purpose property where the primary purpose is nonrecreational, but only where the property is used for recreational purposes." *Id.*

---

2. We note that the Illinois Supreme Court granted leave to appeal in *Bubb v. Springfield School District 186* on December 6, 1994 (Ill.Sup.Ct. No. 777–62).

We decline to follow the Illinois appellate court's construction of section 3–106 announced in *Bubb*. We think it improvident to follow an intermediate state court's interpretation of state law if we are convinced that the state's highest court would decide the issue differently. *Robinson v. Ada S. McKinley Community Services, Inc.*, 19 F.3d 359, 363 (7th Cir.1994); *Smith v. Navistar Int'l Transportation Corp.*, 957 F.2d 1439, 1443 (7th Cir.1992). The test announced in *Bubb* ignores established and well-reasoned Illinois appellate court decisions holding that section 3–106 immunity is triggered by the recreational character of the property, *i.e.*, whether the property in question is "intended or permitted to be used for recreational purposes." 745 ILCS 10/3–106. Nothing in the statute requires an examination of the property's primary purpose.[3] Indeed, an inquiry into a facility's primary purpose would undoubtedly involve genuine issues of material fact, precluding summary judgment in virtually all cases under section 3–106 of the Tort Immunity Act. We do not believe the Illinois legislature intended to create a triable issue of fact each and every time a public entity raised the bar of tort immunity under section 3–106 of the Act.

■ Moreover, with the exception of *Bubb*, Illinois appellate courts have consistently refused to consider the plaintiff's use of the property in determining its character. *See, e.g., Hanover*, 181 Ill.Dec. at 112–13, 608 N.E.2d at 185–86; *Ramos*, 136 Ill.Dec. at 531, 544 N.E.2d at 1306. Immunity under section 3–106 depends upon the character of the property as a whole, rather than whether the injured person was engaged in a nonrecreational activity. *See Kirnbauer v. Cook County Forest Preserve Dist.*, 215 Ill.App.3d 1013, 159 Ill.Dec. 499, 506, 576 N.E.2d 168, 175 (1991) (immunity applied to an area of a forest preserve used to block vehicle access); *Annen v. McNabb*, 192 Ill.App.3d 711, 139 Ill.Dec. 669, 670, 548 N.E.2d 1383, 1384 (1990) (immunity applied where plaintiff who was watching a baseball game was injured in a park restroom).

The legislative history of section 3–106 supports this broad interpretation of the statute. Prior to its amendment in 1986, section 3–106 of the Tort Immunity Act applied only to public property "intended or permitted to be used as a park, playground or open area for recreational purposes." Ill. Rev.Stat.1985, ch. 85, para. 3–106. In 1986, the legislature amended the statute to provide immunity for "*any* public property intended or permitted to be used for recreational purposes,...." 745 ILCS 10/3–106 (emphasis added). Amended section 3–106 still provided immunity for parks, playgrounds, and open areas, but added "buildings or other enclosed recreational facilities" to the illustrative list of immunized public properties. *Id.* In our opinion, the 1986 amendment to section 3–106 evidences the legislature's intent to broaden the scope of immunity provided by the Tort Immunity Act beyond parks and playgrounds to encompass other properties where recreational uses are intended or permitted. *See Bonfield v. Jordan*, 202 Ill.App.3d 638, 148 Ill. Dec. 110, 560 N.E.2d 412 (1990) (where the court observed that amended section 3–106 would apply to a village hall rented for a private party). The plain language of section 3–106 of the Tort Immunity Act grants owners of public property immunity from negligence suits where the property is "intended or permitted to be used for recreational purposes." 745 ILCS 10/3–106; *see Hanover*, 181 Ill.Dec. at 111, 608 N.E.2d at 184 ("[t]he best indicator of [legislative] intent is the language of the statute itself"). We refuse to infer any "primary purpose" limitation not found in the language of the statute.

### III.

Diamond's negligence claim against the SMEAA for its alleged failure to maintain the Convention Center's underground tunnel in a reasonably safe condition is barred by section 3–106 of the Tort Immunity Act because the Convention Center is "public property ... permitted to be used for recreation-

---

**3.** We note that this case does not require us to determine whether immunity attaches to public property permitted to be used for recreational purposes on a single occasion.

al purposes" within the meaning of the Act.[4] The judgment of the district court is

AFFIRMED.

**4.** We affirm the district court's conclusion that section 3–106 immunity applies, but in so doing, we find it unnecessary to comment on the court's reasoning that the Convention Center is public property intended to be used for recreational purposes. Section 3–106 grants immunity for public property "intended or permitted to be used for recreational purposes." Because the Convention Center was dedicated to a number of uses, including recreational uses, we need not address the SMEAA's argument that the Center was intended for recreational use.