Sylvester v. Chicago Park District, No. 81138 (12/4/97)

      

      NOTICE: Under Supreme Court Rule 367 a party has 21 days

      after the filing of the opinion to request a rehearing.

      Also, opinions are subject to modification, correction or

      withdrawal at anytime prior to issuance of the mandate by

      the Clerk of the Court. Therefore, because the following

      slip opinion is being made available prior to the Court's

      final action in this matter, it cannot be considered the

      final decision of the Court. The official copy of the

      following opinion will be published by the Supreme Court's

      Reporter of Decisions in the Official Reports advance

      sheets following final action by the Court.

      

      

      

              Docket No. 81138--Agenda 13--March 1997.

           ALICE SYLVESTER, Appellee, v. THE CHICAGO PARK

                        DISTRICT, Appellant.

                  Opinion filed December 4, 1997.

                                   

          JUSTICE MILLER delivered the opinion of the court:

          Plaintiff, Alice Sylvester, filed a complaint

     against defendant, the Chicago Park District, to recover

     damages for injuries she sustained as a result of a fall

     on Park District property. The complaint alleged the Park

     District was negligent in allowing a concrete parking

     abutment to block a walkway adjacent to a parking lot

     exit located south of Soldier Field.

          The Park District moved to dismiss the complaint

     pursuant to section 3--106 of the Local Governmental and

     Governmental Employees Tort Immunity Act (Tort Immunity

     Act) (Ill. Rev. Stat. 1989, ch. 85, par. 3--106). Section

     3--106 provides:

                    "Neither a local public entity nor a

                    public employee is liable for an injury where

                    the liability is based on the existence of a

                    condition of any public property intended or

                    permitted to be used for recreational

                    purposes, including but not limited to parks,

                    playgrounds, open areas, buildings or other

                    enclosed recreational facilities, unless such

                    local entity or public employee is guilty of

                    willful and wanton conduct proximately causing

                    such injury." Ill. Rev. Stat. 1989, ch. 85,

                    par. 3--106.

     The trial judge denied the Park District's motion to

     dismiss.

          Following a bench trial, the judge ruled in favor of

     plaintiff. However, the judge reduced plaintiff's damages

     by 10% due to her comparative negligence. The Park

     District appealed. The appellate court affirmed. No. 1--

     93--3639 (unpublished order under Supreme Court Rule 23).

          The Park District filed a petition for leave to

     appeal. 155 Ill. 2d R. 315(a). We allowed the Park

     District's petition. We also allowed the Illinois

     Association of Park Districts, the Illinois Municipal

     League, and the Illinois Governmental Association of

     Pools to file a joint amici curiae brief. 155 Ill. 2d R.

     345(a). While the appeal was pending here, plaintiff

     filed a motion in this court seeking leave to file a

     first amended complaint in the trial court. Plaintiff's

     motion has been taken with the case.

     

                           BACKGROUND

          On September 23, 1991, plaintiff and her husband

     parked their car at a McCormick Place parking lot and

     walked toward Soldier Field in order to meet their

     daughters for a Monday evening Chicago Bears football

     game. While walking to Soldier Field, plaintiff tripped

     over a concrete parking abutment (a "car stop") and fell.

     Employees of the Park District admitted that the car stop

     was improperly blocking a walkway.

          The record reveals that at the time of plaintiff's

     fall, the car stop was located on a walkway adjacent to

     a parking lot exit at the northeast corner of Soldier

     Field's south parking lot. In her complaint, plaintiff

     alleged that this location was owned, operated,

     possessed, and maintained by the Park District. The Park

     District admitted this allegation.

          Plaintiff stated in her complaint that she was

     walking on Park District property in order to reach

     Soldier Field to attend a football game. Plaintiff has

     not alleged and the record does not reveal whether

     plaintiff's fall occurred within the confines of a park.

     Evidence was introduced, however, to show that the

     Burnham Park maintenance department cleans the south lot

     after events occurring at Soldier Field.

          Plaintiff allegedly sustained a number of injuries

     as a result of her fall. Plaintiff sued the Park District

     under a theory of negligence. Plaintiff alleged that the

     Park District was negligent in either placing the car

     stop on the walkway or in failing to remove the car stop

     from the walkway. Plaintiff also alleged that the Park

     District was negligent in failing to warn pedestrians of

     the car stop's location and in failing to illuminate

     adequately the area in which the car stop was located.

     Plaintiff did not allege any willful or wanton misconduct

     on the part of the Park District.

          Relying on section 3--106 of the Tort Immunity Act,

     the Park District filed a motion to dismiss plaintiff's

     complaint under section 2--619(a)(9) of the Code of Civil

     Procedure. Ill. Rev. Stat. 1989, ch. 110, par. 2--

     619(a)(9). The Park District claimed in its motion that

     plaintiff's use of its property was for the recreational

     purpose of attending a football game. The Park District

     stated that this use was intended and permitted by the

     Park District. Thus, the Park District argued that

     plaintiff's allegations of negligence were barred by

     section 3--106.

          In support of its motion to dismiss, the Park

     District stated that the parking lot and walkway were

     recreational property because they allowed patrons of

     Soldier Field to park in close proximity to the stadium.

     The Park District stated that parking in proximity to the

     stadium furthers a patron's recreational activity of

     attending a Chicago Bears football game. The Park

     District's motion to dismiss was denied.

          In its answer to plaintiff's complaint, the Park

     District asserted several affirmative defenses. The Park

     District again relied on section 3--106. The Park

     District claimed that it was not liable for the

     negligence alleged by plaintiff because plaintiff's fall

     occurred on public property used for recreational

     purposes.

          In a further affirmative defense, the Park District

     also relied on section 3--102(a) of the Tort Immunity Act

     (Ill. Rev. Stat. 1989, ch. 85, par. 3--102(a)). Section

     3--102(a) provides that a local public entity shall not

     be liable for injury occurring on public property unless

     it is proven that the local public entity has actual or

     constructive notice of the injury causing condition. The

     Park District stated it had neither actual nor

     constructive notice of the car stop's improper placement

     on the walkway. Lacking notice, the Park District alleged

     that it was immune from liability.

          In the alternative, the Park District relied on

     section 3--102(b) of the Tort Immunity Act (Ill. Rev.

     Stat. 1989, ch. 85, par. 3--102(b)). Section 3--102(b)

     provides that a local public entity does not have

     constructive notice of an injury causing condition

     located on public property if the local public entity

     operates a reasonably adequate inspection system. The

     Park District alleged that its pregame traffic control

     and parking lot setup routine around Soldier Field

     qualified as an "inspection system" under section 3--

     102(b). The Park District claimed that its inspection

     system provided a defense to any finding of constructive

     notice.

          Following a bench trial, the judge ruled in favor of

     plaintiff. In reaching this result, the judge found that

     the Park District was negligent in failing to provide

     reasonably safe access to Soldier Field. The judge then

     addressed, and rejected, the Park District's defenses

     under sections 3--106 and 3--102.

          The judge found that the Park District's section 3--

     106 defense did not apply. The judge stated: "As I

     previously said, the Park District can't rely on Section

     3--106, which grants immunity for recreational

     facilities, because this parking lot that is access to

     Soldier Field is not a recreational facility."

          The judge also found that there was no evidence to

     indicate that the Park District had actual notice of the

     car stop's location on the walkway. However, the judge

     did find that the Park District had constructive notice

     of the car stop's location. The car stop was conspicuous

     because it weighed approximately 100 pounds and took

     several men or a forklift to move. Also, based on the

     photographs entered into evidence, the judge stated,

     "this conspicuous obstacle did exist, and it must have

     been there, I found, for enough time for the Park

     District to become aware of it." Because the Park

     District had constructive notice of the car stop's

     improper placement on the walkway, the judge found that

     the Park District was not immune from liability under

     section 3--102(a).

          The judge further found no evidence to support the

     Park District's claim that its pregame traffic control

     and parking lot setup routine qualified as an inspection

     system that would have led to the discovery of the

     improperly positioned car stop. Thus, section 3--102(b)

     did not provide a defense to the Park District's

     constructive notice of the car stop's improper location

     on the walkway.

          The appellate court affirmed. No. 1--93--3639

     (unpublished order under Supreme Court Rule 23). The

     appellate court examined the Park District's section 3--

     106 defense in light of Bubb v. Springfield School

     District 186, 167 Ill. 2d 372 (1995). In Bubb, we

     addressed whether a school district is immune from

     liability for negligence under section 3--106 when a

     student is injured on a sidewalk surrounding a school

     when that sidewalk is used for recreation.

          Relying on Bubb, the appellate court attempted to

     determine whether the location of plaintiff's fall was a

     recreational area under section 3--106. The court stated

     that the Park District failed to present evidence

     regarding the recreational character of the location of

     plaintiff's fall. Lacking this evidence, the court

     concluded the trial judge was correct to find that

     section 3--106 did not provide immunity for the Park

     District.

          During its appeal to the appellate court, the Park

     District, for the first time in its reply brief, asked

     the appellate court to take judicial notice of the fact

     that plaintiff's fall occurred within Burnham Park. The

     court declined to do so. The court stated that even if it

     were to take judicial notice of the location of Burnham

     Park, the Park District still failed to carry its burden

     of establishing a section 3--106 affirmative defense. The

     court found that the Park District did not introduce any

     evidence that plaintiff's fall occurred in an area

     traditionally used for recreational purposes.

          The appellate court also reviewed the trial judge's

     two section 3--102 findings. Because the car stop was

     conspicuous and improperly positioned long enough for the

     Park District to become aware of it, the court concluded

     that a finding of constructive notice under section 3--

     102(a) was not against the manifest weight of the

     evidence.

          In addition, the appellate court agreed with the

     trial judge that there was no evidence to demonstrate

     that the Park District operated a reasonably adequate

     inspection system. Thus, the trial judge's section 3--

     102(b) finding was not against the manifest weight of the

     evidence.

     

                           DISCUSSION

          The Park District asks this court to take judicial

     notice of the fact that plaintiff's fall occurred within

     Burnham Park. Assuming we take judicial notice of this

     fact, the Park District argues that it is automatically

     entitled to immunity under section 3--106 because parks

     are by definition "property intended or permitted to be

     used for recreational purposes." Ill. Rev. Stat. 1989,

     ch. 85, par. 3--106. For the reasons that follow, we

     decline to take judicial notice of the location of

     plaintiff's fall.

          Prior to trial, the Park District did not claim in

     its motion to dismiss or in its answer to plaintiff's

     complaint that plaintiff's fall occurred within Burnham

     Park. During trial, the Park District did not claim or

     introduce evidence to demonstrate that plaintiff was

     injured in a park. In fact, the Park District concedes in

     its brief that "no evidence was presented at trial

     technically fixing the situs of plaintiff's injury as a

     sidewalk located in Burnham Park." Furthermore, the Park

     District never asked the trial judge to take judicial

     notice of the fact that plaintiff was injured in Burnham

     Park.

          The Park District in its reply brief in the

     appellate court asked that court to take judicial notice

     that plaintiff was injured in Burnham Park. The appellate

     court declined to do so. The court stated that even if it

     were to take judicial notice of the location of

     plaintiff's fall, the Park District failed to establish

     that plaintiff's fall occurred in an area traditionally

     used for recreational purposes.

          The Park District has waived its contention that

     plaintiff was injured in a park by failing to present

     evidence or seek judicial notice of this fact in the

     trial court. "[I]t is axiomatic that where evidence was

     not offered during the trial of a matter, it cannot be

     introduced for the first time on appeal." H.J. Tobler

     Trucking Co. v. Industrial Comm'n, 37 Ill. 2d 341, 344

     (1967). Also, "[i]t is required that the points argued on

     appeal be commensurate with the issues presented at

     trial." Kravis v. Smith Marine, Inc., 60 Ill. 2d 141, 147

     (1975). Moreover, the Park District's contention that

     plaintiff was injured in a park was raised for the first

     time in its reply brief in the appellate court. Under

     Supreme Court Rule 341(e)(7), points not argued in an

     appellant's brief are waived and shall not be raised in

     the reply brief. 155 Ill. 2d R. 341(e)(7).

          In the alternative, the Park District argues that

     plaintiff's fall occurred on "property intended or

     permitted to be used for recreational purposes." Ill.

     Rev. Stat. 1989, ch. 85, par. 3--106. The evidence shows

     that plaintiff's fall occurred on the walkway of a Park

     District parking lot serving Soldier Field. The Park

     District intended for and permitted football fans to park

     in the lots adjacent to Soldier Field and use the

     walkways to gain access to the stadium. Plaintiff

     possessed a ticket to attend the football game and was

     injured while walking to the game. Thus, the Park

     District argues that the location of plaintiff's fall was

     part of the recreational purpose of Soldier Field. We

     agree.

          In Bubb, we found that section 3--106 "applies if

     public property is intended or permitted to be used for

     recreational purposes, regardless of the primary purpose

     of the property." Bubb, 167 Ill. 2d at 384. Application

     of a section 3--106 defense does not depend only on a

     plaintiff's active engagement in a recreational activity

     at the time of injury. See J. DeAno, Governmental

     Immunities for Recreational Injuries, 82 Ill. B.J. 28,

     28-29 (1994).

          In addition, section 3--106 may apply to facilities

     or structures that increase the usefulness of public

     property intended or permitted to be used for

     recreational purposes. These facilities or structures

     need not be recreational in character for section 3--106

     to apply. See S. Puiszis, Illinois Municipal Tort

     Liability sec. 4--10, at 183 (1996). Although the

     walkways and parking lots adjacent to Soldier Field may

     not be primarily recreational, Soldier Field itself is

     certainly recreational and these facilities increase its

     usefulness. Taken as a whole, we find that Soldier Field

     and its adjacent walkways and parking lots are intended

     or permitted to be used for recreational purposes.

          A review of the legislative history supports our

     conclusion. Prior to 1986, local public entities were

     faced with difficulties affording liability insurance. As

     stated by Senator Rock, legislators were "somewhat

     appalled that counties and park districts and

     municipalities were confronted with the fact that they

     were uninsurable or that the insurance that was offered

     to them was unaffordable." 84th Ill. Gen. Assem., Senate

     Proceedings, June 30, 1986, at 78 (statements of Senator

     Rock).

          The legislature responded to these difficulties by

     enacting Public Act 84--1431 which, among other things,

     amended portions of the Tort Immunity Act. In order to

     decrease the costs of liability insurance, the

     legislature expanded the scope of immunity provided to

     local public entities under section 3--106. The

     legislature accomplished this expansion of immunity by

     abandoning the focus on specific types of public property

     and instead focusing on the intended or permitted use of

     the property.

          Prior to its amendment in 1986, "section 3--106

     immunity was specifically limited to parks, playgrounds,

     and open areas used for recreational purposes." Bubb, 167

     Ill. 2d at 378. Following its amendment, immunity was

     expanded by including "public property intended or

     permitted to be used for recreational purposes, including

     but not limited to parks, playgrounds, open areas,

     buildings or other enclosed recreational facilities."

     Pub. Act 84--1431, art. 1, sec. 2, eff. November 25, 1986

     (amending Ill. Rev. Stat. 1985, ch. 85, par. 3--106).

          Thus, under section 3--106 as amended, it is the

     character of the property as a whole that determines

     whether immunity applies. See Bubb, 167 Ill. 2d at 379,

     381 (agreeing with the reasoning of courts that examine

     "the nature of the property as a whole"). In this case,

     an examination of the property as a whole indicates that

     the parking lot in which plaintiff fell was an integral

     part of the Soldier Field recreational facility. We

     therefore believe that the trial judge erred in narrowly

     focusing on only whether the parking lot by itself was

     being used for recreational purposes.

          We note that our conclusion is consistent with the

     Seventh Circuit's decision in Diamond v. Springfield

     Metropolitan Exposition Auditorium Authority, 44 F.3d 599

     (7th Cir. 1995). In Diamond, the plaintiff was on her way

     to a career related conference when she was injured in

     the doorway of an underground tunnel leading to a

     facility used for conventions, shows, and sporting

     events.

          The court stated that section 3--106 immunity

     depends on "the character of the property as a whole,

     rather than whether the injured person was engaged in a

     nonrecreational activity." Diamond, 44 F.3d at 604.

     Because both participants in and spectators of sporting

     events are engaged in recreation (see Diamond, 44 F.3d at

     603), the court found that the facility was permitted to

     be used for recreational purposes (see Diamond, 44 F.3d

     at 604-05). Accordingly, the court concluded that

     plaintiff's negligence action was barred by section 3--

     106.

          Our appellate court has reached similar results. In

     Annen v. Village of McNabb, 192 Ill. App. 3d 711 (1990),

     plaintiff was injured in a restroom located in a park.

     Under section 3--106, the appellate court affirmed the

     dismissal of plaintiff's negligence claim. The court

     stated that "[w]hile a restroom building itself is not

     intended to be used for recreational purposes, it allows

     a park user to continue using the park ***. This

     increases the usefulness of the park and advances the

     legislative purpose." Annen, 192 Ill. App. 3d at 713.

          In Lewis v. Jasper County Community Unit School

     District No. 1, 258 Ill. App. 3d 419 (1994), plaintiff

     was injured by falling against a pumphouse located on a

     school playground. Relying on section 3--106, the

     appellate court affirmed the dismissal of plaintiff's

     negligence claims. The court stated that the "immunity

     provisions of section 3--106 have been held to apply to

     nonrecreational equipment and structures located on

     premises used for recreational activities." Lewis, 258

     Ill. App. 3d at 423.

          Similar results may be found in additional cases.

     See, e.g., Conoway v. Hanover Park Park District, 277

     Ill. App. 3d 896 (1996) (plaintiff was barred from

     recovery when injured by falling into a drainage ditch in

     a park); Hanover Insurance Co. v. Board of Education of

     the City of Chicago, 240 Ill. App. 3d 173 (1992) (worker

     was barred from recovery when injured by slipping on

     cracked concrete in a school playground while performing

     masonry repairs); Kirnbauer v. Cook County Forest

     Preserve District, 215 Ill. App. 3d 1013 (1991)

     (plaintiff was barred from recovery when injured by a

     cable barricade restricting entry to a forest preserve

     access road).

          Because we find that the Park District is not liable

     in actions for negligence in the circumstances presented

     here, we do not address the Park District's additional

     immunity arguments regarding constructive notice under

     section 3--102 nor do we address the Park District's

     argument that parks are automatically entitled to

     immunity under section 3--106.

          We must still dispose of plaintiff's pending motion

     seeking leave to file a first amended complaint under

     Supreme Court Rule 362. 155 Ill. 2d R. 362. The purpose

     of Rule 362 is to amend the pleadings to conform to the

     evidence presented at trial. A movant "must show the

     amendment to be necessary, that no prejudice will result

     to the adverse party if the amendment sought is

     permitted, and that the issues sought to be raised by the

     amendment are supported by the facts in the record on

     appeal." 155 Ill. R. 362(b). "Rule 362 is not a vehicle

     to raise wholly new issues on appeal." Local 165 v.

     Bradley, 149 Ill. App. 3d 193, 213 (1986).

          In plaintiff's motion, she seeks leave to add a

     second count to her complaint alleging that the Park

     District engaged in willful and wanton misconduct. The

     trial had proceeded only on a theory of negligence. In

     fact, plaintiff's attorney stated to the trial court:

     "First of all, I would just like to state again for the

     record this case is based upon [a] theory of negligence,

     and it is not incumbent upon my client in this action to

     prove any willful and wanton conduct on the part of the

     Park District."

          In Griffin v. Darda, 28 Ill. App. 3d 693 (1975),

     plaintiff was a passenger in an automobile that collided

     with another vehicle. Plaintiff filed suit against the

     driver of the automobile in which she was riding.

     Plaintiff alleged the driver was guilty of willful and

     wanton misconduct. Following a bench trial, judgment was

     entered in the driver's favor. On appeal, plaintiff

     sought to amend her complaint to add a count alleging

     negligence against the driver. After citing Rule 362, the

     appellate court stated that the trial below had:

                    "proceeded on the theory that when

                    [plaintiff] was injured, [the driver] was

                    guilty of willful and wanton misconduct.

                    Witnesses were called, cross-examination was

                    conducted, and evidence was presented in

                    accordance with this theory. There is no fact

                    in the record to support the notion that

                    negligence was a theory of the case." Griffin,

                    28 Ill. App. 3d at 696-97.

     The appellate court denied plaintiff's motion seeking

     leave to file an amended complaint.

          In this case, plaintiff proceeded on a theory of

     negligence and specifically stressed that point in the

     trial court. There are no facts in the record which

     indicate that a theory of willful and wanton misconduct

     on the part of the Park District was a theory at trial.

     Like the Park District's request that we take judicial

     notice of the parking lot's location within Burnham Park

     to which the plaintiff objected, plaintiff's attempt to

     amend her complaint comes too late. Plaintiff's motion

     seeking leave to file a first amended complaint is

     denied.

     

                           CONCLUSION

          For the foregoing reasons, we find that the Park

     District is entitled to immunity under section 3--106 of

     the Tort Immunity Act. Accordingly, we reverse the

     judgments of the appellate and trial courts. In addition,

     we deny plaintiff's motion seeking leave to file a first

     amended complaint.

     

     Judgments reversed.

                                                               

                                                                      CHIEF JUSTICE FREEMAN, specially concurring:

          My colleagues hold that plaintiff's fall occurred on

     "property intended or permitted to be used for

     recreational purposes" as provided in section 3--106 of

     the Local Governmental and Governmental Employees Tort

     Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989,

     ch. 85, par. 3--106). Therefore, they find that the Park

     District is not liable for injuries which the plaintiff

     sustained. I concur with the majority's conclusion that

     the property on which plaintiff fell is intended or

     permitted to be used for recreational purposes. However,

     I believe that the majority's application of the

     increased usefulness test will provide broader immunity

     than the legislature intended. 

          Specifically, the majority asserts that the Park

     District intended for and permitted football fans to park

     in the lots adjacent to Soldier Field and use the

     walkways to gain access to the stadium. Because plaintiff

     possessed a ticket to attend the football game and was

     injured while walking to the game, the majority concludes

     that the location of plaintiff's fall was part of the

     recreational purpose of Soldier Field.

          The majority bases its reasoning on appellate court

     cases which have held that, taken as a whole, a facility

     or structure will be considered to fall within the scope

     of section 3--106 if it increases the usefulness of

     public property intended or permitted to be used for

     recreational purposes. See Conoway v. Hanover Park Park

     District, 277 Ill. App. 3d 896, 900 (1996); Kirnbauer v.

     Cook County Forest Preserve District, 215 Ill. App. 3d

     1013, 1022-23 (1991). This test was first espoused in

     Annen v. Village of McNabb, 192 Ill. App. 3d 711 (1990).

     In Annen, the plaintiff was using a restroom located

     within a park when a sink fell from a wall, seriously

     injuring her. The court found that the purpose of section

     3--106 manifested an intent to include restroom

     facilities within a park as part of the park itself. The

     court stated:

                    "A restroom facility located within a

                    park is a part of the park. While a restroom

                    building itself is not intended to be used for

                    recreational purposes, it allows a park user

                    to continue using the park without having to

                    leave the park to use restroom facilities.

                    This increases the usefulness of the park and

                    advances the legislative purpose." Annen, 192

                    Ill. App. 3d at 713.

     The majority in the instant case adopts the reasoning in

     Annen and concludes that, "[a]lthough the walkways and

     parking lots adjacent to Soldier Field may not be

     primarily recreational, Soldier Field itself is certainly

     recreational and these facilities increase its

     usefulness." Slip op. at 7.

          Although the increased usefulness test provides a

     fairly straightforward means to determine whether certain

     property is subject to section 3--106 immunity, I do not

     believe that the test should be so mechanically applied

     such that any consideration of the injured party's use of

     the property is ignored. In fact, we considered limiting

     the scope of the "increased usefulness" test in Bubb,

     where we stated:

               "Providing immunity to any public property

                    where recreation might occur would eviscerate

                    the duty codified in section 3--102. *** [A]t

                    some point, the use of public property for

                    recreation may be so incidental that section

                    3--106 does not apply." Bubb v. Springfield

                    School District 186, 167 Ill. 2d 372, 382

                    (1995).

          I believe that this case is one in which plaintiff's

     use of the property was so incidental that section 3--106

     should not apply. The record reveals that the plaintiff

     parked her car in the McCormick Place parking lot,

     approximately one mile from Soldier Field. However, the

     injury occurred as she was crossing the south parking

     lot, which is located across the street from Soldier

     Field. The parking lot where plaintiff was injured does

     increase the usefulness of Soldier Field; the lot

     provides convenient parking for the public. However,

     plaintiff's actual use of the property was incidental, as

     she was merely walking across the lot to reach Soldier

     Field. It is only happenstance that the lot is available

     to increase the use of Soldier Field. Plaintiff's

     presence on the lot had nothing to do with the lot's

     availability for parking. Plaintiff merely chose the lot

     as the path by which she could access Soldier Field. Had

     plaintiff chosen a different path to access Soldier

     Field, that property, simply because it provided

     convenient access, would not merit section 3--106

     immunity. 

          I do not believe that the legislature intended to

     expand the scope of section 3--106 to provide immunity to

     governmental units for use that is merely incidental to

     the purpose of the property. For all practical purposes,

     unless the increased usefulness test is limited in its

     application and scope, the duty of a governmental unit to

     exercise even ordinary care will be diminished.

     

          JUSTICE HARRISON, dissenting:

          I agree with Justice Freeman's conclusion that

     section 3--106 should not apply to this case.  In my

     view, however, this conclusion must yield a different

     result. Because the Park District is not entitled to

     immunity under section 3--106, there is no basis for

     disturbing the judgments of the circuit and appellate

     courts, and those judgments should be affirmed. 

     Accordingly, I dissent.

     

          JUSTICE NICKELS, also dissenting:

          Plaintiff was injured when she fell upon a walkway

     which is adjacent to a Soldier Field parking lot. The

     majority finds the Park District immune from liability

     for plaintiff's injuries under section 3--106 of the

     Local Governmental and Governmental Employees Tort

     Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989,

     ch. 85, par. 3--106), because plaintiff's fall occurred

     on property intended or permitted to be used for

     recreational purposes. Because I cannot concur with the

     majority's conclusion in this case, I respectfully

     dissent.

          The legislature codified the general duty of a local

     public entity to use ordinary care to maintain public

     property in section 3--102 of the Tort Immunity Act (Ill.

     Rev. Stat. 1989, ch. 85, par. 3--102). However, section

     3--106, on which the majority relies, provides a public

     entity with an affirmative defense, which, if properly

     raised and proven, bars a plaintiff's right to recovery.

     Bubb v. Springfield School District 186, 167 Ill. 2d 372,

     378 (1995). Section 3--106 provides in pertinent part

     that a local public entity shall not be liable for an

     injury where the liability is based on the existence of

     a condition of any public property intended or permitted

     to be used for recreational purposes. Ill. Rev. Stat.

     1989, ch. 85, par. 3--106. Whether public property is

     intended or permitted to be used for a recreational

     purpose within the meaning of section 3--106 requires a

     case-by-case examination of the nature of the property

     involved. Bubb, 167 Ill. 2d at 384.

          The majority agrees with the Park District's

     contentions that the parking lots and walkways adjacent

     to Soldier Field were intended to be used by football

     fans on their way to games at the stadium. They agree

     that, because plaintiff possessed a ticket to a football

     game and was injured while walking to the game, the

     walkway where plaintiff fell was part of the recreational

     purpose of Soldier Field.

          In coming to this conclusion, the majority relies on

     appellate court cases which hold that section 3--106

     immunity may apply to a facility or structure that

     increases the usefulness of public property intended or

     permitted to be used for recreational purposes. I believe

     the majority's holding is an unwarranted expansion of

     immunity to public entities which far exceeds the

     legislature's intent.

          First, the appellate court cases on which the

     majority relies are readily distinguishable. Unlike the

     instant case, the plaintiffs in all those cases were

     barred from recovery under the Tort Immunity Act because

     their injuries occurred while they were actually within

     a recreational facility. See Bubb, 167 Ill. 2d at 382

     (plaintiff injured on school property designated as part

     of the playground); Conoway v. Hanover Park Park

     District, 277 Ill. App. 3d 896, 900 (1996) (plaintiff

     injured in drainage ditch in a park); Lewis v. Jasper

     County Community Unit School District No. 1, 258 Ill.

     App. 3d 419, 420 (1994) (plaintiff injured on a pumphouse

     inside a playground); Hanover Insurance Co. v. Board of

     Education, 240 Ill. App. 3d 173, 174 (1992) (plaintiff

     injured on cracked concrete of a playground); Annen v.

     Village of McNabb, 192 Ill. App. 3d 711, 713 (1990)

     (plaintiff injured in restroom within a park); Diamond v.

     Springfield Metropolitan Exposition Auditorium Authority,

     44 F.3d 599 (7th Cir. 1995) (plaintiff injured in tunnel

     that was part of a convention center).

          Furthermore, in Bubb and Diamond, neither court was

     concerned with whether the site of the plaintiff's injury

     increased the usefulness of the recreational property. In

     Bubb, at issue was whether the sidewalk where plaintiff

     was injured was intended and permitted to be used as part

     of the playground and, therefore, was within the scope of

     section 3--106. See Bubb, 167 Ill. 2d at 382-83. In

     Diamond, the issue before the court was whether the

     convention center where plaintiff was injured could be

     considered recreational property because it sponsored

     recreational as well as nonrecreational events. See

     Diamond, 44 F.3d at 604.

          Moreover, that plaintiff in the instant case was

     injured while walking to the stadium to attend a football

     game should not influence the determination of whether

     the locale of her injury was recreational property.

     Immunity under section 3--106 "depends on the character

     of the property in question, not the activity performed

     at any given time." Bubb, 167 Ill. 2d at 379; see also

     Larson v. City of Chicago, 142 Ill. App. 3d 81, 87 (1986)

     (immunity did not apply to a roller skating injury on a

     public sidewalk because a public sidewalk is not

     recreational property like a park or playground); John v.

     City of Macomb, 232 Ill. App. 3d 877, 880 (1992)

     (immunity did not apply to an injury suffered at a band

     concert on a courthouse lawn because permitting that

     recreational activity did "not so alter the character of

     a public area not generally used for recreational

     activity that it would necessarily fall within the

     intended scope of section 3--106").

          The 1986 amendment to the Tort Immunity Act

     evidences the legislature's intent to expand the scope of

     section 3--106 to include within its coverage any

     recreational property similar in nature to the types of

     properties listed in the statute. Bubb, 167 Ill. 2d at

     378, citing Bonfield v. Jordan, 202 Ill. App. 3d 638, 645

     (1990). However, unlike the majority, I do not believe

     that the legislature intended to provide immunity for all

     property that surrounds a recreational facility and

     which, incidentally, accommodates the public's use of the

     recreational facility.

          As noted earlier, local public entities have a

     general statutory duty to exercise ordinary care to

     maintain public property. See Ill. Rev. Stat. 1989, ch.

     85, par. 3--102. This court, when construing a

     legislative act, should consider each section in

     connection with other sections. Castaneda v. Illinois

     Human Rights Comm'n, 132 Ill. 2d 304, 318 (1989).

     Although section 3--106 of the Tort Immunity Act provides

     immunity for recreational property, providing immunity to

     any public property which somehow accommodates or make

     more convenient the use of other public recreational

     property would totally eviscerate the duty codified in

     section 3--102. Cf. Bubb, 167 Ill. 2d at 382.

          I believe that the use of a walkway adjacent to a

     Soldier Field parking lot is a mere convenience and is so

     incidental that it simply cannot be considered property

     intended or permitted to be used for recreational

     purposes. For the foregoing reasons, I would affirm the

     judgment of the appellate court.

     

          JUSTICE HARRISON joins in this dissent.